# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00733-CV

**David Martin Camp and Bargains for Millionaires LLC d/b/a Revival, Appellants**

**v.**

**Dawn Patterson, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-16-002212, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, David Martin Camp and Bargains for Millionaires LLC d/b/a Revival (Revival) challenge the trial court's denial of their motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA or the Act). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. Dawn Patterson sued Camp and Revival for defamation, business disparagement, tortious interference with prospective business relations, and intentional infliction of emotional distress, citing text messages and emails Camp sent to Patterson and others. Camp and Revival filed a motion to dismiss pursuant to section 27.003 of the TCPA, contending that Patterson filed her lawsuit "in response to" their "exercise of the right of free speech" under the Act. *See id.* §§ 27.001(3), .003(a). For the reasons that follow, we affirm in part, reverse and render in part, and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Camp was an owner and the CEO of Revival, which sold home goods bought from independent vendors and contracted with independent interior designers to assist customers with remodeling projects. In December 2013, Revival contracted with Patterson to provide interior design services. In early August 2015, Patterson stopped working for Revival. At some point prior to August 4, 2015, Camp's wife Tara [1]—who was a shareholder in the company, had worked for the company, and was friends with Patterson—left him. On August 4, 2015, Camp sent a text message to Patterson stating,

> Just FYI you are next, simply because I know you are behind the scenes instigating Tara's moves and telling her what to do. You two created fraudulent invoices to make money to start a business, and lied. That's fraud and embezzlement, Tara is not an owner she is a shareholder and has zero rights to money or corporate property. You 100% will stand accountable along side her. Might wanna get your hubby ready for the big one! I will not stop until she is in jail and held accountable for what she has done. You will join her.

On August 8, 2015, Camp again texted Patterson stating,

> Dawn, as you are likely aware by now I have found everything. All evidence trails proving full fraud, embezzlement, brand infringement, theft, official document tampering, conspiracy, conspiracy to defraud family courts by moving money and much much more. You know them all so no [point recounting them for you.] . . . want my kids home by the end of Saturday and all the cash Tara has taken so far including what's in the BBVA account. None of this is negotiable. Tara has nothing left here for her anymore. She will not have any money, the kids or revival [sic]. She needs to go and you need to disappear like you [never existed].[2]

---

[1] For clarity, we refer to Tara Camp by her first name.

[2] On the copies of the text messages contained in the appellate record, some words are omitted, as reflected by the ellipsis in the above quote. The brackets indicate words omitted from

2

Approximately two weeks later, Camp sent emails to two of Revival's vendors, Elk Group International and Codarus. The email to Elk Group International, dated August 18, 2015, read as follows: "I am the owner of revival [sic] and have discovered multiple fraud instances involving Tara and Dawn. I am asking that you please suspend all account activity until this matter has been resolved legally." The essentially identical email to Codarus, dated August 19, 2015, stated: "I am the owner of Revival in Austin TX and I have recently discovered multiple potential fraud instances involving 2 employees, Tara Camp and Dawn Patterson. I am ask [sic] that you please suspend all account activity for Revival until this matter has been resolved legally. Please do not communicate with or receive orders from either of these two people."

On September 18, 2015, Patterson, through her attorney, demanded that Camp and Revival retract the statements, which she claimed were defamatory. Within days, Camp began sending group text messages to Patterson and Tara. These text messages were laced with profanity and included name-calling, threats, and internet memes suggesting that the women were incompetent and that Camp hated them. Camp called both women "delusional," "disgusting humans," and "grotesque human beings" for whom he has "zero respect"; accused them of "lying," "deceiving," and having "[messed up] 100% of all [their] jobs at revival [sic]"; stated that "if either of you work out of a similar place, try to sell goods similar to revival [sic], or come near 15 miles of revival [sic] to set up shop we will stay in court until we are all broke. Try me"; and asked Patterson if, while she was in town, she wanted to "swing by so I can say hi and also shove a large pole up your asshole."[3]

_____

the copies of the message but supplied in Patterson's petition and not disputed by Camp.

[3] In her affidavit, Patterson testified that Camp's behavior so "terrified" her that she reported it to the police. In her petition, she alleged that Camp was subsequently arrested and charged with

3

In May 2016, Patterson brought suit against Camp and Revival, asserting claims of defamation, business disparagement, tortious interference with prospective business relations, and intentional infliction of emotional distress, all predicated on the text and email messages. Camp and Revival filed a motion to dismiss under the TCPA, contending that Patterson's claims were "based on, relate[] to, or [were] in response to" the "exercise of the right of free speech," as defined in the Act, because they were "made in connection with a matter of public concern." *See id.* § 27.001(3) (defining "exercise of the right of free speech" as "a communication made in connection with a matter of public concern"), (7) (defining "matter of public concern"), .003(a) (providing that party may file motion to dismiss legal action if it is "based on, relates to, or is in response to a party's exercise of the right of free speech"). Specifically, Camp and Revival argued that the texts and emails at issue were communications "made in connection with a matter of public concern" because they "relate[d] to" "good[s] and product[s sold in] the marketplace." *See id.* § 27.001(7)(E) (identifying as matter of public concern "an issue related to . . . a good, product, or service in the marketplace"). Camp and Revival further argued that Patterson had not established a prima facie case for her claims. *See id.* § 27.005(c) (requiring dismissal if Act applies unless plaintiff establishes prima facie case). Camp and Revival also sought attorney's fees, expenses, and sanctions. *See id.* § 27.009 (a)(1), (2).

Camp and Revival attached to their motion to dismiss Camp's affidavit. In his affidavit, Camp stated that he had sent text messages to Patterson addressing fraud issues he had discovered and had sent two emails to "two of Revival's primary vendors/product suppliers

misdemeanor harassment.

4

regarding [Patterson's] activities while working for Revival." He explained that the vendor accounts were "financial based credit lines and multiple employees/staff have access to the accounts" and that "because of the financial nature of the accounts any suspected fraud requires a review of the accounts." He further explained that he had asked the vendors "to suspend access to the account by specific name and informed the vendor of the fraud potential for a review of accounts activity until [he] could determine the extent of [Patterson's] fraudulent activities while working for Revival." Patterson responded to the motion and attached copies of the text messages and her affidavit denying the alleged fraudulent conduct. Following a hearing, the trial court denied the motion without specifying its reasoning.[4] This interlocutory appeal followed. *See id.* § 51.014(a)(12) (providing for appeal from interlocutory order denying motion to dismiss under section 27.003).

## TCPA DISMISSAL MECHANISM AND STANDARD OF REVIEW

The TCPA is often characterized as an "anti-SLAPP" statute, i.e., a means by which defendants targeted by "Strategic Lawsuits Against Public Participation," or SLAPP, suits can move for dismissal of such lawsuits. *See id.* § 27.002; *see, e.g.*, *Serafine v. Blunt (Serafine I)*, 466 S.W.3d 352, 365–67 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring) (summarizing TCPA legislative history and emphasis on "anti-SLAPP" concerns). The TCPA allows a motion to dismiss a "legal action" that is "based on, relates to, or is in response to a party's exercise of," as relates to this appeal, "the right of free speech." Tex. Civ. Prac. & Rem. Code

---

[4] At the conclusion of the hearing, the trial court stated on the record that it did "not believe that the issue in this case is related to a good, product or service in the marketplace under the [TCPA]," but the trial court did not reduce any such determination to writing through its order or separate findings.

§ 27.003(a). The Act defines "the exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "matter of public concern" is defined as, relevant to this appeal, "an issue related to . . . a good [or] product . . . in the marketplace." *Id.* § 27.001(7)(E). A "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The Texas Supreme Court has held that the Act protects both public and private communications. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2016) (per curiam) (explaining its holding in *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)).

In enacting the TCPA, the legislature explained that its overarching purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. "To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." *Coleman*, 512 S.W.3d at 898. In the first step, the party filing a motion to dismiss under section 27.003 of the TCPA bears the burden to show by a "preponderance of the evidence" that the "legal action" is "based on, relates to, or is in response to," as relevant to this appeal, the party's "exercise of the right of free speech." Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b); *Coleman*, 512 S.W.3d at 898. If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the nonmovant "establishes by clear and

6

specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c); *see Coleman*, 512 S.W.3d at 899. Even when the nonmovant meets this burden, however, the trial court still must dismiss the lawsuit if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claims." Tex. Civ. Prac. & Rem. Code § 27.005(d); *see Coleman*, 512 S.W.3d at 899. In determining whether to dismiss an action, the trial court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a); *see Serafine I*, 466 S.W.3d at 357.

Our analysis requires statutory construction, which is a question of law that we review de novo. *See Coleman*, 512 S.W.3d at 899. Our primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "If that language is unambiguous, we interpret the statute according to its plain meaning." *Lippincott*, 462 S.W.3d at 509. "Additionally, '[we] presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted.'" *Coleman,* 512 S.W.3d at 899 (quoting *Lippincott*, 462 S.W.3d at 509). "We are also mindful that the legislature has directed us to construe the Act 'liberally to effectuate its purpose and intent fully.'" *Lippincott*, 462 S.W.3d at 509 (quoting Tex. Civ. Prac. & Rem. Code § 27.011(b)).

**DISCUSSION**

**Application of TCPA**

Based on the relevant provisions of the TCPA, the Act applies if Patterson's claims are one or more "legal actions" that are "based on, relate[] to, or [are] in response to"

7

"communications" "made in connection with" "an issue related to" "a good [or] product . . . in the marketplace." *See* Tex. Civ. Prac. & Rem. Code §§ 27.001(1), (3), (6), (7)(E), .003(a), .005(b). The parties do not dispute that Patterson's claims are "legal actions" that are "based on, relate[] to, or [are] in response to" the text and email messages sent by Camp. *See id.* §§ 27.001(6) (defining "legal action"), .003(a) (providing that party may file motion to dismiss if "legal action" is, relevant to this appeal, "based on, relates to, or is in response to a party's exercise of the right of free speech"), .005(b) (providing, relevant to this appeal, for dismissal of "legal action" that movant shows by preponderance of evidence is "based on, relates to, or is in response to a party's exercise of the right of free speech"). Nor do they dispute that the text and email messages were "communications" within the meaning of the TCPA. *See id.* § 27.001(1) (defining "communication" as "the making or submitting of a statement or document in any form or medium, including . . . electronic"); *Coleman*, 512 S.W.3d at 899 (stating that email statements fall within statutory definition of communication). Rather, they join issue on whether any of the text and email communications were "made in connection with a matter of public concern," i.e, whether they were "made in connection with" "an issue related to" "a good [or] product . . . in the marketplace." *See* Tex. Civ. Prac. & Rem. Code § 27.001(3) (defining "exercise of the right of free speech" as "communication made in connection with matter of public concern") (7)(E) (defining "matter of public concern" to include "an issue related to" "a good [or] product in the marketplace"). In their second issue,[5] Camp and Revival argue that the trial court erred in denying their motion to dismiss

---

[5] Although Camp and Revival state five issues, "Issue 1" is merely a recital of the applicable standard of review. Accordingly, we do not address it as a substantive issue.

because text and email messages qualified as "exercises of their right of free speech" as "communications made in connection with matters of public concern," specifically issues related to the goods and products provided by the vendors to Revival and, in turn, sold by Revival in the marketplace. *See id.* § 27.001(3), (7)(E).

Although the messages on which Patterson's causes of action are based were private, not public, communications, "[t]he plain language of the statute imposes no requirement that the form of the communication be public." *See Lippincott*, 462 S.W.3d at 509 (stating that, in absence of limiting language, "we must presume that the Legislature broadly included both public and private communications"). Thus, Camp and Revival have met their burden to show that the TCPA applies if messages were "made in connection with" "an issue related to" "a good [or] product . . . in the marketplace" and therefore were "made in connection with a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code § 27.001(3), (7)(E); *Lippincott*, 462 S.W.3d at 509 (stating that statutory definition of right of free speech "has two components: (1) the exercise must be made in a communication and (2) the communication must be made in connection with a matter of public concern").

In *Coleman*, the Texas Supreme Court held that the TCPA does not require that the communications specifically mention the matter of public concern. 512 S.W.3d at 900 (stating that TCPA does not require that statements mention health, safety, environmental, or economic concerns, matters of public concern involved in *Coleman*); *see* Tex. Civ. Prac. & Rem. Code § 27.001(7) (defining "matter of public concern" as "an issue related to (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or

9

(E) a good, product, or service in the marketplace"). The Texas Supreme Court further held that the Act does not require more than a "tangential relationship" to the matter of public concern and that construing the term "in connection with" as suggesting "something more than a tenuous or remote relationship" would be "reading language into the statute that is not there." *See Coleman*, 512 S.W.3d at 900–01 (overturning court of appeals' conclusion that communication must involve more than tangential relationship to matter of public concern) (internal quotations omitted). Rather, the *Coleman* court concluded that, for the TCPA to apply, the communications must only be "'in connection with' 'issue[s] related to' . . . identified matters of public concern chosen by the Legislature." *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 27.001(3), (7)).

*Coleman* involved statements by Coleman's supervisors in internal reporting documents and to an investigator that Coleman, a terminal technician, violated company policy by failing to gauge a tank and then reporting otherwise. *See* 512 S.W.3d at 897–98. Coleman sued ExxonMobil and his two supervisors for defamation, alleging that their statements were untrue. *Id.* at 897. Although no harm resulted from Coleman's alleged failure to gauge the tank, one of the supervisors offered affidavit testimony that failure to gauge tanks can create serious safety and environmental risks, endanger employee's health, and affect ExxonMobil's economic interests. *Id.* at 898. The Texas Supreme Court held that, although the statements were private and among ExxonMobil employees, they related to a matter of public concern "because they concerned Coleman's alleged failure to gauge [a] tank . . . , a process completed, at least in part, to reduce the potential environmental, health, safety, and economic risks associated with noxious and flammable chemical overfilling and spilling onto the ground." *Id.* at 901.

10

The Texas Supreme Court's guidance in *Coleman* informs our analysis here.[6] We are mindful that the communications need not directly mention or have more than a tangential connection with the issue related to a good or product in the marketplace. *Id.* at 900–01. The email messages, on which Patterson's claims for defamation, business disparagement, and tortious interference were based, expressly concern Patterson's and Tara's alleged fraud in connection with invoices for Revival's goods and products, Revival's account activity in purchasing goods and products from vendors Elk Group International and Codarus, and the suspension of Revival's account activity/orders for goods and products with Elk Group International and Codarus until the matter of alleged fraudulent invoices could be resolved. The text messages, on which Patterson's intentional infliction of emotional distress claim was factually predicated, were made in connection—some directly and some tangentially—with issues related to invoices for goods and products bought by Revival for resale in the marketplace, Patterson's and Tara's alleged creation of fraudulent invoices for those goods and products, and their intent to sell goods similar to those sold by Revival. *See id.* at 901.

_____

[6] Our analysis is further informed by a recent decision by this Court holding that the TCPA was applicable to certain communications that had a similarly remote or tenuous connection to the matter of public concern at issue. *See Cavin v. Abbott*, ___S.W.3d ___, No. 03-16-00395-CV, 2017 Tex. App. LEXIS 6511, at *1–11, *31–43 (Tex. App.—Austin July 14, 2017, no pet. h.) (describing communications, which included personal slurs and insinuations, and construing analogous relational terms "relates to" and "in response to" as used in sections 27.003 and 27.005). Specifically, this Court held that the legal action was "related to" the movant's exercise of the right of free speech in the sense of "being rooted in a common controversy, or as having overlapping facts and evidence" or was "in response to" the movant's exercise of free speech "in the sense of reacting to or temporally following." *See id.* at *37–43 (following reasoning in *Coleman*, applying plain meaning of "relates to" and "in response to," and holding that TCPA applied to all claims asserted except claim for assault, expressly excluded by section 27.010(c)). Similarly, the text and email messages here—even the personal attacks—were rooted in a common controversy concerning goods and products in the marketplace or were made in reaction to that controversy.

In light of the broad statutory language, and particularly in light of the Texas Supreme Court's application of the Act to the facts in *Coleman*, we are compelled to conclude that the text and email messages in this case, although private, related to "matter[s] of public concern" because they were "made in connection with" "issue[s] related to" "good[s and] product[s]" sold by Revival "in the marketplace." *See* Tex. Civ. Prac. & Rem. Code §§ 27.001(3), (7)(E), .003(a), .005(b); *Coleman*, 512 S.W.3d at 900–01 (citing Tex. Civ. Prac. & Rem. Code § 27.001(7)(A), (B) and concluding that statements made by Coleman's supervisors related to matter of public concern because they concerned issues related to environmental, health, safety, and economic concerns); *Lippincott*, 462 S.W.3d at 509 (holding that plain language of Act imposes no requirement that communication be public); *Cavin v. Abbott*, No. 03-16-00395-CV, 2017 Tex. App. LEXIS 6511, at *37–43 (Tex. App.—Austin July 14, 2017, no pet. h.) (concluding that TCPA applied to communications that included private slurs and insinuations). Accordingly, we further conclude that Camp and Revival successfully established that the TCPA applies to Patterson's lawsuit. *See Coleman*, 512 S.W.3d at 901 (concluding that Coleman met burden to show TCPA applied to lawsuit where communications related to environmental, health, safety, and economic concerns). And even if any specific content included within the complained-of communications would not independently qualify as "made in connection with an issue relating to a matter of public concern," it would remain that Patterson's "legal actions" at least "related to" content that did qualify, establishing the Act's applicability, as all of the claims stem from the same underlying nucleus of facts. *See Cavin*, 2017 Tex. App. LEXIS 6511 at *37–43. We sustain Camp's and Revival's second issue.

**Prima Facie Case**

Having concluded that the TCPA applies to Patterson's legal action, we turn to Camp and Revival's fourth issue, in which they argue that Patterson failed to present clear and specific evidence establishing a prima facie case for each essential element of her claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c) (providing that trial court may not dismiss legal action if nonmovant shows by "clear and specific evidence prima facie case for each essential element of claim in question"). Although the trial court did not reach this issue, it was before the trial court in Camp's and Revival's motion to dismiss, *see id.* § 27.0005(b)–(d), and "no additional trial-level proceedings are necessary for the issues to be judicially determined," *see Cavin*, 2017 Tex. App. LEXIS 6511, at *43–44 (reaching issue of prima facie case and citing *Serafine I*, 466 S.W.3d at 357 ("We . . . review de novo a trial court's determination of whether a [TCPA] nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims.")); *see also Coleman*, 512 S.W.3d at 902 (remanding to court of appeals for consideration of proof of prima facie case).

Patterson's burden "can be restated in terms of three components: (1) with respect to 'each essential element of [each] claim in question,' [she] must have presented (2) a 'prima facie case' (3) by 'clear and specific evidence.'" *See Cavin*, 2017 Tex. App. LEXIS 6511, at *44; *see also Hersh v. Tatum*, ___ S.W.3d ___, No. 16-0096, 2017 Tex. LEXIS 649, at *11–12 (Tex. June 30, 2017). The essential elements are the facts that a party must plead and prove to obtain relief on a claim. *Cavin*, 2017 Tex. App. LEXIS 6511, at *44; *see In re Lipsky*, 460 S.W.3d 579, 592–96 (Tex. 2015) (orig. proceeding) (addressing essential elements of nonmovant's business

disparagement and defamation claims). "'[P]rima facie case' has a traditional legal meaning. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. It is the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Lipsky*, 460 S.W.3d at 590 (internal citations and quotations omitted). Because the TCPA does not define "clear and specific evidence," we give those terms their ordinary meanings. *Id.* "The words 'clear' and 'specific' in the context of this statute have been interpreted respectively to mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *Id.* (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (quoting *Black's Law Dictionary* 268, 1434 (8th ed. 2004) (internal quotations omitted))). "Collectively, these elements require that a party 'provide enough detail to show the factual basis for its claim' . . . ." *Cavin*, 2017 Tex. App. LEXIS 6511, at *45 (quoting *Lipsky*, 460 S.W.3d at 591).

Patterson asserted four causes of action against Camp and Revival: (1) defamation, (2) business disparagement, (3) tortious interference with prospective business relationships, and (4) intentional infliction of emotional distress. We address defamation and business disparagement together and the remaining claims in turn.

### Defamation and Business Disparagement

"Business disparagement and defamation are similar in that both involve harm from the publication of false information." *Lipsky*, 460 S.W.3d at 591 (citing *Waste Mgmt. of Tex., Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014)). The elements of defamation are (1) publication of a false statement of fact to a third party, (2) that was defamatory

14

concerning the plaintiff, (3) while acting with either actual malice, if the plaintiff is a public official, or with negligence, if the plaintiff is a private individual, regarding the truth of the statement, and (4) damages unless the statement constitutes defamation per se. *D Magazine Partners, L.P. v. Rosenthal*, ___ S.W.3d ___, No. 15-0790, 2017 Tex. LEXIS 296, at *9–10 (Tex. Mar. 17, 2017); *Lipsky*, 460 S.W.3d at 593. Whether statements are defamatory is a question of law subject to de novo review. *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 723 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *disapproved on other grounds*, *In re Lipsky*, 460 S.W.3d at 587, 591. "To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)); *accord Lipsky*, 460 S.W.3d at 592.

Patterson's causes of action for defamation and business disparagement are based on the two emails Camp sent to Revival's vendors in which he stated that Patterson and Dawn had committed fraud. On appeal, Camp and Revival challenge only whether Patterson established by clear and specific evidence a prima facie case that the email communications were false. Patterson argues that as a private plaintiff suing non-media defendants, she is entitled to a presumption of falsity. We agree with Patterson as to her defamation claim but disagree as to her claim for business disparagement.

Even if we were to assume that the TCPA's vastly expansive definition of "matter of public concern" for purposes of statutory coverage has relevance to the assignment of the burden

15

of proof under constitutional law, "neither the United States Supreme Court nor the Supreme Court of Texas has required a private plaintiff to prove the falsity of defamatory statements in suits against *nonmedia* defendants, even when the statements are on matters of public concern." *Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 Tex. App. LEXIS 3472, at *28 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (mem. op). Instead, falsity is presumed. In the absence of clear guidance from the United States Supreme Court or the Texas Supreme Court, we agree with the reasoning of our sister court in *Cummins* and conclude that because Patterson is a private individual suing a non-media defendant, the burden of proof would not shift to Patterson, and the falsity of the text and email statements is presumed. *See id.* at *28. Camp and Revival have not challenged Patterson's proof of a prima facie case as to any other elements of her defamation claim. Consequently, we need not address those elements. *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain clear and concise argument for contentions made with citation to authorities and record). Accordingly, we overrule Camp's and Revival's fourth issue as to Patterson's defamation claim.

On the other hand, a business disparagement plaintiff must establish falsity. *See Lipsky*, 460 S.W.3d at 592 (holding that "a plaintiff must establish that . . . the defendant published false and disparaging information about it"); *Moldovan*, No. 05-15-0102, 2016 Tex. App. LEXIS 8283, at *18 n.4 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (stating that plaintiff "must prove falsity" (citing *Waste Mgmt.*, 434 S.W.3d at 155 (listing elements of business disparagement claim)). Accordingly, we conclude that Patterson bore the burden to establish a prima facie case as to the falsity element of her business disparagement cause of action. We turn, then, to whether Patterson

16

established by clear and specific evidence a prima facie case that the email statements to Revival's vendors that Patterson committed fraud were false.

In considering whether a legal action should be dismissed, a court must consider the pleadings and supporting and opposing affidavits. Tex. Civ. Prac. & Rem. Code § 27.006(a); *Hersh*, 2017 Tex. LEXIS 649, at *11–12 (holding that trial court was obliged to consider plaintiffs' pleadings irrespective of whether they had been formally offered as evidence). In her petition, Patterson generally alleged the facts as recited above, but the only allegation related to falsity in connection with her defamation claim was the single assertion that Camp's statements were false. In her response to the motion to dismiss, she argued that the two-week delay between Camp's accusing her of creating fraudulent invoices and his advising the vendors to suspend account activity is circumstantial evidence of falsity. In her supporting affidavit, attached to her response, she stated, "At no point have I engaged in any of the fraudulent activity described by Mr. Camp [in his affidavit]." Camp and Revival contend that Patterson's affidavit statement is conclusory, lacks detail, and does not constitute clear and specific evidence of the falsity of the statements. We agree. "Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *Lipsky*, 460 S.W.3d at 592. "General averments . . . , without more, do not satisfy the minimum requirements of the TCPA." *Id.* at 593 (holding that plaintiff's affidavit statement that it had "suffered direct pecuniary and economic losses," without any "specific supporting facts illustrating how [defendant's] alleged remarks . . . actually caused such losses," was insufficient to satisfy TCPA's requirement of clear and specific evidence of damages). Such "conclusory" allegations

17

"'are not probative and accordingly will not suffice to establish a prima facie case.'" *Serafine I*, 466 S.W.3d at 358 (quoting *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)).

The statements in Patterson's pleadings and affidavit are self-serving and "conclusory," that is, completely devoid of details to support her factual inference or show the factual basis for her claims. *See Black's Law Dictionary* at 351; *Lipsky*, 460 S.W.3d at 591 (holding that TCPA plaintiff must provide enough detail to show factual basis for claim). She states the factual conclusion that the statements are false and that she has not engaged in the alleged fraudulent activities but stops short of offering any explanation or objectively verifiable details that could have been countered by opposing evidence. *See KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 715–16 (Tex. 2016) (concluding that plaintiff physician's affidavit in which she stated that it was "apparent" that her patients were "concerned" about the published statements stopped short of identifying any concerned patient and was "self-serving . . . conclusory hearsay"); *see also Campbell v. Clark*, 471 S.W.3d 615, 631 (Tex. App.—Dallas 2015, no pet.) (stating that affidavit of defamation plaintiff in TCPA case containing "'self-serving protestations of sincerity'" cannot solely defeat 'proof of actual malice'" (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002))). Considering her affidavit testimony along with the allegations in her petition and response, we cannot conclude that Patterson met her burden to establish by "clear and specific evidence a prima facie case" of the falsity element of her business disparagement cause of action. *See Lipsky*, 460 S.W.3d at 593; *Serafine I*, 466 S.W.3d at 361–62 (concluding that nonmovants failed to establish prima facie case for existence of contract in claim for tortious interference with contract

18

where affidavit testimony indicated possible contract but "did not provide detail about the specific terms of the contract or attach . . . any contract or other document memorializing any agreement"). We sustain Camp's and Revival's fourth issue as to Patterson's cause of action for business disparagement.

### *Tortious Interference with Prospective Business Relations*

"To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Like her defamation and business disparagement claims, Patterson's cause of action for tortious interference with prospective business relations appears to be based on the two emails Camp sent to Revival's vendors. Camp and Revival argue that Patterson's affidavit addresses none of the elements of tortious interference with prospective business relations, with the possible exception of the damages element. We agree. In her affidavit, she testified that the "baseless accusations" "have negatively impacted my ability to start my own business and earn a living," and in her response to the motion to dismiss, she made a virtually identical statement. In her petition, Patterson merely alleged that Camp's and Revival's interference had "caused Plaintiff's injury, resulting in damages." These statements are not sufficient to establish a prima facie case of the

19

damages element. *See Lipsky*, 460 S.W.3d at 593 (holding that plaintiff's affidavit statement that it had suffered "direct pecuniary and economic losses," without any specific supporting facts, was conclusory and therefore insufficient to satisfy TCPA's requirement of clear and specific evidence of damages).

Even if Patterson's statements were sufficient to prove the damage element, Patterson failed to establish that there was a reasonable probability of her entering into any prospective business relationships. In her petition, Patterson merely alleged that there was a "reasonable probability that she would have entered into a business relationship with a third person, including but not limited to Elk Group International and Codarus"—a bare allegation she restated in her response—without offering any specific facts to support the conclusion that any such relationship was probable. *See Lipsky*, 460 S.W.3d at 593 (concluding that statement without specific supporting facts was conclusory and therefore insufficient to establish element of claim under TCPA). Patterson's affidavit contains no reference to any prospective business relationships. Thus, there is no evidence of a specific party with whom Patterson had a reasonable probability of entering into a business relationship absent Camp's emails. *See Coinmach*, 417 S.W.3d at 924 (holding that plaintiff was required to establish that defendant's "conduct actually interfered with a reasonably probable contract"); *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 476 (Tex. App.—Houston [1st Dist. 2006, pet. denied) (stating that reasonable probability of relationship is determined considering "all of the facts and circumstances attendant to the transaction" and concluding that "mere negotiations" were not sufficient). On appeal, Patterson seems to argue that it is reasonable to assume that "there is a reasonable probability" of her entering into "a business

20

relationship with one or more similar vendors" because she was "a prospective business owner in the same industry as Revival." However, assumptions—even reasonable ones—are not evidence. Patterson presented no evidence that there was a reasonable probability that she would have entered into a business relationship with any third party but for the conduct of Camp and Revival and thus failed to establish by clear and specific evidence a prima facie case as to this element of her claim for tortious interference. *See Coinmach*, 417 S.W.3d at 923; *Richardson-Eagle*, 213 S.W.3d at 476. We sustain Camp's and Revival's fourth issue as to Patterson's cause of action for tortious interference with prospective business relations.

### *Intentional Infliction of Emotional Distress*

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). Patterson's claim for intentional infliction of emotional distress appears to be based on the series of text messages Camp sent to Patterson individually and to Patterson and Dawn in group texts.[7] Camp and Revival argue that Patterson failed to establish by clear and specific evidence a prima facie case that she suffered severe emotional distress. On this record, we agree.

---

[7] Although Patterson did not state in her petition which communications formed the basis of her claim for intentional infliction of emotional distress, in her response to Camp's and Revival's motion to dismiss, Patterson specified that this claim is based on the text messages.

21

Emotional distress includes embarrassment, fright, horror, grief, shame, humiliation, worry, and severe emotional distress that is distress that is so severe no reasonable person could be expected to endure it. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). Mere worry, anxiety, vexation, embarrassment, or anger are not enough, and there must be a high degree of mental pain and distress, but evidence of a physical manifestation is not required. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 443–44 (Tex. 1995); *Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 223 (Tex. App.—Austin 2017, no pet.). In her petition, Patterson stated only that the "emotional distress" she suffered "was severe." In her affidavit, she stated that as a result of Camp's conduct, she suffered "tremendous emotional distress, including but not limited to, loss of sleep, loss of appetite, depression and anxiety" and that Camp's conduct "terrified her so [that she] reported it to the police," echoing virtually identical statements in her response.

We conclude that this evidence does not constitute clear and specific evidence of severe emotional distress. In contrast to Patterson's testimony here, in *Bruce*, the plaintiffs testified that, as a result of the defendant's actions, they had "experienced a variety of emotional problems, including crying spells, emotional outbursts, nausea, stomach disorders, headaches, difficulty in sleeping and eating, stress, anxiety, and depression," that they had "experienced anxiety and fear," that they had "sought medical treatment for these problems," and that they "were prescribed medication to alleviate the problems." *See* 998 S.W.2d at 618–19. In addition, an expert witness testified that the plaintiffs each suffered from post-traumatic stress disorder. *See id.* at 619. The Texas Supreme Court concluded that this evidence was legally sufficient to show emotional distress. *See id.*; *see also Lipsky*, 460 S.W.3d at 593 (concluding that affidavit failed to satisfy TCPA's

requirement of clear and specific evidence because it was conclusory and "devoid of any specific facts"); *Long Canyon*, 517 S.W.3d at 223 (concluding that for purposes of TCPA motion to dismiss, assertions that plaintiffs suffered stress and severe emotion distress and were annoyed and alarmed by defendant's conduct were "not clear and specific evidence of emotional distress that approached the severity described in *Bruce*"); *Deaver v. Desai*, 483 S.W.3d 668, 677 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (concluding that "a single allegation that they endured 'shame, embarrassment, humiliation, and mental anguish" did "not qualify as clear and specific evidence [under TCPA] because [plaintiffs] did not establish explicitly or with particularity how they suffered their emotional distress").

Other than stating that she reported Camp's conduct to the police, Patterson offered no evidence of the severity of her emotional distress—the degree of her loss of sleep, depression, or anxiety—or any evidence that she sought professional help, and she did not establish with any particularity how she suffered emotional distress or demonstrate how the distress rose to a level that a reasonable person could not be expected to endure. *See Deaver*, 483 S.W.3d at 677; *Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994, no writ) (holding that testimony that as result of defendant's conduct, plaintiff was "'very angry,' humiliated, and suffered from depression [but] did not seek professional help" was legally insufficient to support finding of severe emotional distress); *cf. Morgan v. Anthony*, 27 S.W.3d 928, 931 (Tex. 2000) (per curiam) (finding more than scintilla of evidence of severe emotional distress where plaintiff testified that defendant's actions caused great fear and distress; that she had sought treatment from psychiatrist, psychologist, regular physician, and physician's assistant; and that she suffered from depression, had problems

23

with her family, had nightmares, and was afraid when she left home); *Bruce*, 998 S.W.2d at 618–19 (holding that evidence of variety of emotional problems; treatment for problems, including prescriptions; and diagnosis of post-traumatic stress disorder was legally sufficient to show emotional distress); *Lambert v. Lambert* No. 05-08-00397-CV, 2009 Tex. App. LEXIS 4007, at *10–11 (Tex. App.—Dallas May 29, 2009, no pet.) (mem. op.) (concluding that plaintiff's testimony that as result of defendant's conduct she suffered from weight gain, hair loss, TMJ caused by grinding teeth, damage to gums, loss of sleep, nightmares, fatigue, and depression; psychologist's testimony that he diagnosed plaintiff with "acute stress" and that she was traumatized; and physician's testimony that plaintiff suffered from depression and "stress anxiety syndrome with physical manifestations" were legally sufficient evidence of severe emotional distress). We sustain Camp's and Revival's fourth issue as to Patterson's claim for intentional infliction of emotional distress. To summarize our disposition of Camp's and Revival's fourth issue, we overrule it as to Patterson's defamation claim and sustain it in all other respects.

### Camp's and Revival's Defenses

Having concluded that Patterson was entitled to a presumption of falsity in her claim for defamation and having overruled Camp's and Revival's fourth issue as to that claim, we turn to Camp's and Revival's third issue, in which they argue that they established by a preponderance of the evidence each essential element of a valid defense to Patterson's claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d) (providing that even if nonmovant establishes prima facie case, trial court shall dismiss legal action "if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claims"). Because we have concluded that

24

Patterson failed to establish a prima facie case of all of her causes of action except defamation, we need reach Camp's and Revival's arguments regarding their defenses only as to the defamation claim.

Truth is a defense to a claim for defamation. *Id.* § 73.005(a); *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013); *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). The defense of truth requires defendants to prove that the statements were substantially true. *Neely*, 418 S.W.3d at 62. In their answer, Camp and Revival asserted the defense of substantial truth but did not cite any facts or explain how the statements were substantially true. In their motion to dismiss, they stated that Camp "believed" that Patterson had committed "alleged fraud," asserted that Patterson had the burden to prove that Camp's statements were false, and argued that the statements were not actionable because they were not made to a third party, were opinion, or were rhetorical hyperbole. On appeal, Camp and Revival argue that Camp's affidavit testimony, attached to their response, established by a preponderance of the evidence that the email statements were true. Camp testified, relevant to his and Revival's defense of truth:

> Information was progressively discovered which indicated a series of fraud issues within Revival. Intent was uncovered to dislodge the business from its market share and customer base including blocking Revival's access to vendors so Plaintiff could start a competing business. I believe(d) Plaintiff was committing fraud by creating fraudulent invoices, incorrectly handling money, conspiring to interfere with the business and misrepresenting facts to vendors in an attempt to deny Revival access to goods and products to sell in the marketplace.

Based on the evidence, we cannot agree that Camp and Revival have met their burden. Camp's affidavit is self-serving and "conclusory," i.e., lacking in factual support. The first sentence is a

25

passive-verb statement that "someone" discovered information that "indicated" fraud and does not even refer to Patterson. The second sentence is likewise a passive-verb statement that does no more than suggest that "someone" believed Patterson "intended" to block Revival's access to vendors and start a competing business. The last sentence, like the cited sentence in the motion to dismiss, is simply a statement of Camp's belief that Patterson committed fraudulent acts. Camp and Revival offered no details of the "information" that was discovered, of the evidence of Patterson's efforts to block Revival's access to vendors, or of the alleged fraudulent invoices. Nor did they offer any of the alleged fraudulent invoices into evidence. They did not explain how Patterson incorrectly handled money, conspired to interfere with the business, and misrepresented facts to vendors. In short, Camp's affidavit statements were lacking in factual support and cannot constitute a preponderance of the evidence. *See Serafine I*, 466 S.W.3d at 358 (stating that conclusory statements are not probative); *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) (holding conclusory, baseless testimony to be no evidence). We conclude that Camp's affidavit failed to establish by a preponderance of the evidence that the email statements that Patterson committed fraud were true and that Camp and Revival therefore failed to meet their burden to establish a valid defense to Patterson's defamation claim. We overrule Camp and Revival's third issue as to Patterson's defamation claim and, as stated above, do not reach the remainder of the issue.

### *Remand for Determination of Award under Section 27.009*

In their fifth issue, Camp and Revival request that if we reverse the trial court's order, we remand this case to the trial court for a determination of attorney's fees under the TCPA. The TCPA provides that if the trial court orders dismissal of a legal action, it "shall award to the moving

party . . . court costs, attorney's fees, and expenses as justice and equity may require." Tex. Civ. Prac. & Rem. Code § 27.009(a). The Texas Supreme has determined that upon dismissal under the TCPA, an award of attorney's fees to the successful movant is mandatory. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (holding that TCPA requires that "reasonable attorney's fees" be awarded to successful movant and that term "as justice and equity may require" in section 27.009(a)(1) applies only to award of "other expenses"). Section 27.009 similarly requires an award of sanctions against the nonmovant "sufficient to deter the party who brought the legal action from bringing similar actions described in [Chapter 27]." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2); *see Serafine v. Blunt (Serafine II)*, ___ S.W.3d ___, No. 03-16-00131-CV, 2017 Tex. App. LEXIS 4606, at *22–23 (Tex. App.—Austin May 19, 2017, no pet. h.) (observing that Act's "plain language presumes that *some* sanctions award—i.e., an amount greater than zero—is required").

Based on our resolution of Camp's and Revival's issues, we affirm the trial court's denial of the motion to dismiss as to Patterson's defamation claim and reverse and render judgment dismissing the remainder of Patterson's claims. Accordingly, we remand this case to the trial court to determine the reasonable attorney's fees and sanctions under section 27.009. *See Rosenthal*, 2017 Tex. LEXIS 296, at *28–29 (rejecting argument that movant was not entitled to attorney's fees where trial court granted motion to dismiss as to one of nonmovant's claims but not other, holding that movant was entitled to award of reasonable fees, but expressing no opinion on how continuation of remaining claim affected proper amount of fee, "leaving that to the trial court's discretion on remand"); *Cavin*, 2017 Tex. App. LEXIS 6511, at *47 (affirming trial court's denial of motion to

dismiss as to one claim, reversing and dismissing as to remainder of claims, and remanding to trial court "to determine the attorney's fees and sanctions that must be awarded incident to such dismissal under the TCPA"); *Serafine II*, 2017 Tex. App. LEXIS 4606, at *21–22, 24 (observing that Texas Supreme Court has not specifically addressed issue of whether sanctions under TCPA are mandatory, but "in *Sullivan* it noted without disapproval the appellate court's determination the TCPA 'made an award of sanctions mandatory,' 'tempered by' the amount the trial court determines sufficient to deter similar actions" and remanding to trial court for determination of reasonable attorney's fees and amount of sanctions to be awarded under section 27.009 (citation omitted)); *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 286 (Tex. App.—Dallas 2015, pet. denied) (remanding for determination of award under section 27.009 where trial court's order on motion to dismiss was affirmed in part and reversed in part); *Serafine I*, 466 S.W.3d at 364 (holding that TCPA motion to dismiss should have been granted in part and reversed in part and remanding cause for further proceedings, including determination of award under § 27.009).

## CONCLUSION

We affirm the trial court's order denying the motion to dismiss as to Patterson's defamation claim. As to her other claims, we reverse the trial court's order and render judgment dismissing the claims. We remand to the trial court for further proceedings consistent with this opinion, including consideration of Patterson's defamation claim and determination of the attorney's fees and sanctions that must be awarded under section 27.009 incident to dismissal of the remainder of Patterson's claims.

28

_____

Melissa Goodwin, Justice

Before Justices Puryear, Pemberton, and Goodwin

Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: August 3, 2017