**EXXONMOBIL PIPELINE COMPANY, Robert W. Caudle, and Ricky Stowe, Petitioners,**

v.

**Travis G. COLEMAN, Respondent**

**NO. 15–0407**

Supreme Court of Texas.

OPINION DELIVERED
February 24, 2017

Alicia Calzada, Jason Patrick Bloom, Nina Cortell Haynes and Boone, LLP Dallas TX, for Petitioner.

Allison Schluckebier, David M. Walsh IV, Chamblee, Ryan, Kershaw & Anderson, P.C., Dallas TX, Charles (Chad) E. Baruch, Coyt Randal Johnston Jr., Johnston Tobey Baruch, P.C, Dallas TX, Donald Mark Steadman, Attorney at Law, Rowlett TX, Eliot D. Shavin, Law Office of

Eliot Shavin, Dallas TX, Wade A. Forsman, Attorney at Law, Sulphur Springs TX, for Respondent.

Travis G. Coleman, Carrollton TX, Pro Se.

E. Lee Parsley, Texans for Lawsuit Reform, Austin TX, Hugh Rice Kelly, Texans for Lawsuit Reform, Houston TX, George S. Christian, Texas Civil Justice League, Austin TX, Dale Wainwright, Bracewell LLP, Austin TX, for Amicus Curiae.

## PER CURIAM

In this case, we must determine whether the Texas Citizens Participation Act (TCPA) applies to alleged communications among ExxonMobil Pipeline Company (EMPCo) employees about Travis Coleman, a terminal technician formerly employed by EMPCo. The court of appeals held that EMPCo did not meet its burden to show that the TCPA applies to Coleman's suit. 464 S.W.3d 841, 850. Because the alleged communications were made in connection with a matter of public concern, we hold that EMPCo successfully established TCPA applicability. Accordingly, we reverse the judgment of the court of appeals and remand the case to the court of appeals for further proceedings consistent with this opinion.

Travis Coleman was formerly employed at EMPCo's Irving, Texas, facility. As a terminal technician, Coleman was assigned to perform preventative maintenance tasks, offload shipments from incoming trucks, and record the fluid volume of various petroleum products and additives in storage tanks each night, a process referred to as "gauging the tanks." When gauging the tanks, EMPCo requires that terminal technicians handwrite the results and later record them in EMPCo's computer system so that the results are available on an inventory planning report the following day. Because Coleman allegedly failed to gauge tank 7840 on August 20, 2012, yet reported that he did, EMPCo terminated Coleman's employment in November 2012.

Coleman later sued EMPCo and his two former supervisors, Robert Caudle and Ricky Stowe, for defamation. Coleman asserts that he gauged tank 7840 on April 20, 2012, and that there are documents that prove it. Therefore, Coleman alleges that statements by Caudle and Stowe about the circumstances that led to Coleman's termination are untrue. Specifically, Coleman claims that Caudle's allegations on an EMPCo "Near Loss Report" form and separate inventory sheet cataloging the incident are false because they allege Coleman did not gauge tank 7840. Additionally, Coleman asserts that Stowe's statement to an EMPCo investigator, in which he alleged that he could not find any documents to support Coleman's version of the incident, is false.

Caudle, an EMPCo foreman, supervised Coleman directly. In his affidavit testimony, Caudle claims that on August 20, 2012, he asked another terminal technician to pull additive from tank 7840 to make room for new inventory. The next day, Caudle discovered that tank 7840 was imbalanced and that the inventory numbers in the EMPCo system were the same as the previous day. Investigating the discrepancy, Caudle e-mailed Coleman to ask why he had not gauged the tank. Not receiving an immediate response, Caudle then forwarded his e-mail again to Coleman and additionally to Stowe, Caudle's supervisor. Caudle alleges that Coleman responded on August 28, 2012, admitting that he did not gauge the tank. Following EMPCo's safety protocol, Caudle then prepared a Near

Loss Report.[1] According to Caudle's testimony, EMPCo employees prepare Near Loss Reports "any time an incident occurs or [an] environmental or safety risk is observed," and the reports are then "used as learning tools at monthly safety meetings."

Caudle further testified that EMPCo terminal technicians are required to complete nightly fluid level assessments for three primary reasons: "(i) to assess the fluid levels in the tanks to avoid overfilling; (ii) to determine whether any tanks have leaks; and (iii) to keep an accurate account of the [Irving] Facility's inventory." Caudle claims that when technicians fail to gauge tanks as required, they create serious safety and environmental risks. In fact, the greatest risk from failing to gauge the tanks, according to Caudle, is that tanks could overfill, causing noxious and flammable fluid to spill onto the ground. In addition to endangering other EMPCo employees at the facility, such a spill could potentially cause environmental harm. Other risks include failing to notice leaks, which carries similar environmental and safety concerns, and failing to maintain a proper inventory, negatively impacting EMPCo's economic interests.

According to Stowe's affidavit testimony, EMPCo investigated Coleman for violating EMPCo's ethics policy. Stowe alleges that Coleman violated the policy by failing to gauge tank 7840 and then reporting otherwise. Stowe further alleges that as a result of a November 2012 meeting with Coleman and an EMPCo investigator, Coleman signed a handwritten statement admitting to conduct alleged by Stowe. As a result, EMPCo placed Coleman on leave before finally discharging him in late November 2012. Like Caudle, Stowe claims the communications regarding the incident were made in furtherance of EMPCo's interests.

The stated purpose of the TCPA, found in chapter 27 of the Civil Practice and Remedies Code, is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. The Legislature has instructed that the TCPA "shall be construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b). To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights. *Id.* § 27.003; *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding).

First, the defendant, who has moved to dismiss, must show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE § 27.005(b); *In re Lipsky*, 460 S.W.3d at 586 (alteration in original) (footnotes omitted). The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A " '[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

---

1. In the Near Loss Report, Caudle stated: "On 8/20/12 Tech went out to gauge tanks and after gauging tank 7850 he made the assumption that tank 7840 was the same as night before not knowing the tech on the day shift had change [sic] the pulling tank back to 7840 and did not gauge the tank."

Finally, a " '[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).

Next, the burden shifts to the plaintiff to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Yet, even if the plaintiff satisfies the second step, the court will dismiss the action if the defendant "establishes by a preponderance of the evidence each essential element of a valid defense" to the plaintiff's claim. *Id.* § 27.005(d).

▇▇▇ Issues of statutory construction are reviewed de novo. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (citing *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)). "Our objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." *Id.* (citing *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008)). If the statute's language is unambiguous, "we interpret the statute according to its plain meaning." *Id.* Additionally, "[w]e presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Id.* (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008)).

In 2015, we addressed TCPA applicability in a similar context when deciding *Lippincott v. Whisenhunt*, 462 S.W.3d 507. The rule of law we announced applies directly to the instant case and cannot be reasonably distinguished by the nature or circumstances of the speech giving rise to the lawsuit that constitutes the basis for this appeal. In *Lippincott*, we held that when construing the TCPA's "right of free speech" prong, "the plain language of the Act merely limits its scope to communications involving a public subject—not communications in public form." *Id.* at 508. We rejected the court of appeals' construction that required communication to be public based on its interpretation of the phrase "otherwise participate in government" found within the TCPA's purpose provision. *Id.* at 509; TEX. CIV. PRAC. & REM. CODE § 27.002. We acknowledged that "[h]ad the Legislature intended to limit the Act to publicly communicated speech, it could have easily added language to that effect." *Lippincott*, 462 S.W.3d at 509 (citing *In re M.N.*, 262 S.W.3d at 802). Consequently, we held that because the statute lacked such limiting language, "we must presume that the Legislature broadly included both public and private communication." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 27.011).

At issue in *Lippincott* was whether the TCPA applied to allegedly defamatory statements made between Creg Parks and Matthew Lippincott, administrators at First Surgery Suites, LLC (First Surgery), about Warren Whisenhunt, a nurse anesthetist contracted by First Surgery.[2] *Id.* at 508. The administrators' statements were in electronic form (e.g., e-mail), falling within the statutory definition of communication. *Id.*; TEX. CIV. PRAC. & REM. CODE § 27.001(1). The statements related to whether Whisenhunt "properly

---

**2.** Although the communications in *Lippincott* were between a company and its contractor, and the communications here were among EMPCo employees, the discrete employment relationships in this context amount to a distinction without a difference. *Cf. Bd. of Cty.* *Comm'rs v. Umbehr*, 518 U.S. 668, 673–74, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (applying First Amendment precedent involving government employees to a case involving government contractors).

provided medical services to patients" and included allegations that he falsified records, violated a sterile protocol policy, improperly administered narcotics, and generally "failed to provide adequate coverage of pediatric cases." *Lippincott*, 462 S.W.3d at 509–10. Acknowledging our prior determination that communications about "the provision of medical services by a health care professional" amount to a matter of public concern, we concluded that Parks and Lippincott "successfully demonstrated the applicability of the Act," warranting reversal. *Id.* at 510 (citing *Neely v. Wilson*, 418 S.W.3d 52, 70 n.12 & 26 (Tex. 2013)). Ultimately, we remanded the case to the court of appeals to determine if the defendants met their prima facie burden in light of our decision in *In re Lipsky* addressing that issue. *Id.*

■ Considering the similarities between the nature and circumstances of Coleman's defamation claim here and the allegedly defamatory statements at issue in *Lippincott*, we conclude that EMPCo, Caudle, and Stowe successfully demonstrated TCPA applicability. The court of appeals came to the opposite conclusion, however, holding that the communications among EMPCo employees "had only a tangential relationship to health, safety, environmental, and economic concerns." 464 S.W.3d at 846. The court of appeals determined that the communications were related to Coleman's job performance, made "no mention of health, safety, the environment, or Exxon's economic interests," and related only to a personnel matter. *Id.* The court of appeals further explained that the potential consequences for failing to properly gauge tank 7840 did not transform the challenged communications "about a private employment matter into a public concern." *Id.*

■ We began our analysis in *Lippincott* by instructing that "[a] court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written." *Lippincott*, 462 S.W.3d at 508. Additionally, we determined that the TCPA's plain language does not require communication in public form. *Id.* at 509. As a result, we held that communications about a private employment matter in the context of providing medical services related to health and safety, and, therefore, the communications qualified as a matter of public concern under the TCPA. *Id.* at 509–10. Although the court of appeals in this case acknowledged our holding in *Lippincott*, it failed to apply its reasoning or distinguish its holding. 464 S.W.3d at 845, 848. Instead, the court of appeals improperly narrowed the scope of the TCPA by ignoring the Act's plain language and inserting the requirement that communications involve more than a "tangential relationship" to matters of public concern. *Id.* at 846; *see Lippincott*, 462 S.W.3d at 509 ("We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted."). The TCPA does not require that the statements specifically "mention" health, safety, environmental, or economic concerns, nor does it require more than a "tangential relationship" to the same; rather, TCPA applicability requires only that the defendant's statements are "in connection with" "issue[s] related to" health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature. TEX. CIV. PRAC. & REM. CODE § 27.001(3), (7). Moreover, the court of appeals did not attempt to explain how statements recorded on a form used for employee instruction at monthly safety meetings are not, at the very least, "in connection with" "an issue related to … safety," nor did it identify why statements

related to personnel matters cannot also be in connection with matters of public concern. *Id.* § 27.001(7)(A).

Coleman similarly fails to argue convincingly against TCPA applicability in this context. First, Coleman relies on his own conclusory testimony that "[f]ailing to gauge will not result in serious safety and environmental risks." Next, Coleman argues that the Near Loss Report form "says nothing about safety concerns or issues," and although he indicated in his petition that he learned about Caudle's accusations during a safety meeting, Coleman disputes that the accusations were discussed during the meeting. Finally, Coleman argues that because "in connection with" is disfavored among writing authorities, the court of appeals properly required a "nexus" between a communication and a matter of public concern.

 Each of Coleman's arguments constitutes an effort to narrow the scope of the TCPA by reading language into the statute that is not there. Coleman fails to cite a provision of the TCPA, or a Texas court interpreting the statute, that provides support for the proposition that a plaintiff's conclusory assertion that the defendant's affidavit testimony is untrue defeats the Act's applicability. Similarly, we are not convinced that because a pre-printed form lacks specific reference to the issues identified by the Legislature as matters of public concern, we should ignore evidence suggesting that the user-provided statements added to the form constitute communications in connection with a matter of public concern. Coleman's final argument, in which he suggests the Legislature meant "in connection with" to "suggest[ ] something more than a tenuous or remote relationship," fails to rehabilitate the court of appeals' improper narrowing of the TCPA and instead highlights the error in the court of appeals' analysis. We do not

substitute the words of a statute in order to give effect to what we believe a statute should say; instead, absent an ambiguity, we look to the statute's plain language to give effect to the Legislature's intent as expressed through the statutory text. *Lippincott*, 462 S.W.3d at 509 (citing *Leland*, 257 S.W.3d at 206).

Here, the challenged statements constitute speech the Legislature intended to safeguard through the TCPA. The statements between Caudle, Stowe, and the EMPCo investigator were communications under the TCPA because they were either oral (e.g., discussion of the Near Loss Report at the monthly safety meeting and the November 2012 meeting between Stowe, Coleman, and the EMPCo investigator), written (e.g., the Near Loss Report and Inventory Planning Sheet), or electronic (e.g., e-mails investigating the failure to gauge tank 7840). Tex. Civ. Prac. & Rem. Code § 27.001(1). The statements, although private and among EMPCo employees, related to a "matter of public concern" because they concerned Coleman's alleged failure to gauge tank 7840, a process completed, at least in part, to reduce the potential environmental, health, safety, and economic risks associated with noxious and flammable chemicals overfilling and spilling onto the ground. *Id.* § 27.001(7)(A), (B); *see also Lippincott*, 462 S.W.3d at 509 ("The plain language of the statute imposes no requirement that the form of the communication be public."). Therefore, we conclude that EMPCo, Caudle, and Stowe successfully established the TCPA's applicability to Coleman's lawsuit under the TCPA's free-speech prong. Tex. Civ. Prac. & Rem. Code § 27.003(a).

EMPCo, Caudle, and Stowe alternatively argue that the TCPA applies under the TCPA's "right of association" prong. *See id.* § 27.001(2). Because we hold that, on this record, the communications were

made in the exercise of the right of free speech under the TCPA, we need not reach this issue. Accordingly, we express no opinion on whether the challenged communications were made in the exercise of the right of association under the TCPA.

In conclusion, the statements at issue in this case constitute communications made in connection with environmental, health, safety, and economic concerns under the TCPA. Thus, the TCPA applies, and the court of appeals erred in affirming the trial court's judgment denying petitioners' motion to dismiss under the provisions of the TCPA. Accordingly, without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and remand the case to the court of appeals for further proceedings consistent with this opinion, including consideration of whether Coleman met his burden under the TCPA of establishing by clear and specific evidence a prima facie case for each essential element of his claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c).