**DISSENT and Opinion Filed August 27, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01414-CV

### U.S. ANESTHESIA PARTNERS OF TEXAS, P.A., Appellant
### V.
### WHITNEY KELLEY MAHANA, Appellee

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-08272**

## OPINION DISSENTING FROM DENIAL
## OF EN BANC CONSIDERATION

Before the Court En Banc
Opinion by Justice Whitehill

Imagine that you show up for surgery requiring general anesthesia and as they are wheeling you into the operating room they tell you that the person responsible for administering the drugs that put you to sleep—a person in whose hands your life rests—is a drug addict who that day failed a test for illegal drugs.[1]  Would any ordinary person in that situation have some potential concern for his or her own health and safety?  Would communications among that hospital's personnel discussing that anesthetist's (alleged) drug habits and failed drug test be communications at least tangentially related to public health and safety or community well-being?

---

[1] This hypothetical is based on allegations in the plaintiff's petition about alleged communications.  This opinion does not suggest that these facts are true of plaintiff, but it must accept the petition's allegations at face value for purposes of the TCPA step one analysis.

The panel majority suggests that ordinary people would not have some concern for health and safety or community well-being simply because a person who puts people to sleep for a living is a drug addict who recently failed a drug test.

I requested en banc consideration of this case because the majority opinion conflicts with our prior cases, and a majority of the Court voted to deny en banc consideration. I respectfully dissent from that decision for the following reasons.

## I. ISSUE PRESENTED

The issue is straightforward. Nurse anesthetist Mahana sued her former employer for intentional infliction of emotional distress. She alleged that (i) her supervisor sent text messages to her co-workers stating that she was being removed from her duties because she had tested positive for opiates and other controlled substances and (ii) her supervisor and other employees were spreading rumors that she was a drug abuser and addict. The question presented under the TCPA's first step is whether these statements relate, even tangentially, to a matter of public concern such as public health and safety or community well-being.[2] *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam) (TCPA does not require more than a "tangential relationship" to a "matter of public concern").

The panel opinion holds that the subject matter of those statements doesn't at least tangentially relate to health, safety, or community well-being, that is, a matter of public concern, and therefore the TCPA does not apply in this case. Because the majority opinion is incorrect and conflicts with our controlling precedent, I dissent from the Court's denial of en banc consideration.

---

[2] Step one does not require that the legal action be based on the truth of the communication's content as long as the action relates to or is in response to the communication. *See Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-00874-CV, 2019 WL 3059884, at *5 (Tex. App.—Dallas July 12, 2019, no pet. h.) (mem. op.) (Whitehill, J., concurring). It is the fact that the communication was made and that it implicates one of the three TCPA statutorily defined protected rights that counts for the TCPA's first step analysis. *Id*.

## II. Analysis

**A.    Contrary to the panel opinion, the speech at issue sufficiently implicates (i) health and safety and (ii) community well-being.**

Mahana is a nurse anesthetist.  As this passage from her live pleading shows, the communications at issue are that she is a drug addict who tested positive for illegal drugs one day when she arrived for work:

> Within a short time after the Plaintiff [reported for work and] submitted to the drug testing by the Defendant, supervisors and other persons known and unknown to the Plaintiff at this time intentionally and with malicious intent *began texting that the Plaintiff had tested positive for several illegal drugs and controlled substances* and was being fired.  The Plaintiff was later shown texts from agents and supervisors of the Defendant alleging she had tested positive for numerous illegal or controlled substances when in fact the Plaintiff had tested negative. *The said text also stated or implied that the Plaintiff was a "drug addict"* and was *being terminated for illegal activity.*

(Emphasis added.)  Yet the panel professes that they would not be concerned for their (or the public's) health or safety if they (or the public) appeared for surgery that day and were given that information about the person who would be putting them to sleep in a few minutes.

Under *Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015) (per curiam), and *Coleman*, 512 S.W.3d at 900, Mahana's claim triggers the TCPA with respect to the communications stating that (i) she was being removed from her duties because she tested positive for illegal drugs and controlled substances and (ii) she was a drug addict.

Under the TCPA, the step one question is whether the communication relates at least tangentially to a matter of public concern, such as health, safety, or community well-being. Statements that a nurse anesthetist—a medical professional in whose hands peoples' lives rest— is a drug addict who shows up for work testing positive for illegal drugs and other controlled substances unquestionably and directly relate to public and patient health and safety, let alone tangentially so.  Patients could die or suffer life altering injuries if a nurse anesthetist makes a mistake because of drug impairment.  This is an obvious health and safety risk.  According to

Mahana's petition, the hospital thought so; that is a reason why it fired her. At this stage, we accept the truth of Mahana's petition alleging that fact. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

Many employers consider drug use a health and safety risk, which is why many fire employees for positive tests for illegal drugs. Indeed, Mahana's employment agreement provides that she may be terminated immediately if "a determination is made by the Board that there is an immediate and significant threat to the health or safety of any Patient as a result of the services provided by Provider under this Agreement." Further, Mahana's employment agreement provides that it violates her employer's standards of conduct if there is "[p]hysical or mental impairment while performing clinical duties, including but not limited to, substance abuse."

The majority opinion concludes that there would be a health and safety concern only if someone had said that Mahana used illegal drugs on the job or that her alleged use affected her job performance. That requires too much. It is enough that the public would be concerned about health and safety risks because a drug addicted nurse anesthetist might show up for surgery high on drugs. (None of this is to say that this actually happened in this case, but we must deal with the import of the communications described in Mahana's first amended petition.)

As we have held, whether a statement is true or false has no bearing on whether it implicates a matter of public concern and thus constitutes an exercise of the right of free speech. *AOL, Inc. v. Malouf*, No. 05-13-01637-CV, 2015 WL 1535669, at *3 (Tex. App.—Dallas Apr. 2, 2015, no pet.) (mem. op.); *Cruz v. Van Sickle*, 452 S.W.3d 503, 515 (Tex. App.—Dallas 2014, pet. denied).

The panel opinion's holding that the statements about Mahana do not implicate health and safety conflicts with our holding in *AOL, Inc.* In that case, we held that statements that a dentist had been charged with Medicaid fraud implicated health and safety, among other matters of public concern. 2015 WL 1535669, at *2. The statements about Mahana bear a much more direct

relationship to health and safety than the statements in *AOL, Inc.*, so the panel opinion conflicts with that precedent.

The alleged speech also relates to community well-being. The panel opinion's holding that it doesn't conflicts with both *AOL, Inc.* and *Watson v. Hardman*, 497 S.W.3d 601 (Tex. App.—Dallas 2016, no pet.). In both of those cases, we held that statements accusing someone of criminal activity implicated community well-being. *Watson*, 497 S.W.3d at 607 (accusation of stealing charitable funds); *AOL, Inc.*, 2015 WL 1535669, at *2 (accusation of Medicaid fraud). The panel opinion attempts to avoid the conflict by construing the statements about Mahana to be limited to the state of drug addiction, which is not itself a crime. But the statements about Mahana also accuse her of testing positive for illegal drugs and controlled substances on a day she showed up for work putting people to sleep. Testing positive for illegal drugs necessarily entails illegal use of those substances. Thus, the panel opinion conflicts with both *AOL, Inc.* and *Watson* on this basis. Furthermore, given the allegation of *illegal* drug use, the panel decision's rationale that the TCPA does not apply because the petition did not allege illegal activity is puzzling.

Finally, we should remember that ruling in appellant's favor concerning TCPA step one is not the be-all, end-all here. The real question arises at step two, when we would consider whether Mahana's allegations, if true, add up to a viable intentional infliction of emotional distress claim. This is the sort of thing we routinely address and decide on this Court. There is no reason for not doing so in this case.

### III. CONCLUSION

If a statement that a nurse anesthetist, who routinely puts people to sleep for medical procedures, abuses and is addicted to illegal drugs doesn't at least tangentially relate to health, safety, or community well-being, what statement does?

Because the panel opinion misapplies the TCPA and conflicts with binding precedents from this Court, I respectfully dissent from the Court's refusal to consider this case en banc.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


Schenck, J., joins this dissenting opinion

181414DF2.P05