**DISSENT and Opinion Filed August 27, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01414-CV

**U.S. ANESTHESIA PARTNERS OF TEXAS, P.A., Appellant**
**V.**
**WHITNEY KELLEY MAHANA, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-08272**

## DISSENTING OPINION
Opinion by Justice Bridges

"A court may not judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam). Because the majority impermissibly narrows the definition of "matter of public concern" related to "health or safety," I respectfully dissent. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A).

The majority thoroughly explains the underlying facts of this appeal; therefore, I include only those facts necessary for my analysis.

Appellee Whitney Kelley Mahana is a nurse anesthetist. In 2015, she signed a written employment contract with appellant U.S. Anesthesia Partners of Texas, P.A. (USAP). She provided general anesthetic services for all surgical and obstetric medical procedures requested by the medical facility, which included administering anesthesia as directed by a licensed physician

in all surgical and emergency conditions at the medical facility in both operative and post-operative situations.

On December 21, 2016, the director of nursing for Heritage Surgical Hospital demanded Mahana take a drug test because of "wastage of drugs" shown on pharmacy logs. Mahana submitted to the drug test. According to Mahana's amended petition, a supervisor "began to text [] other employees that Plaintiff was being removed from her duties because she had tested positive for opiates and other controlled substances." Mahana also began receiving text messages and telephone calls "that rumor of alleged drug abuse and addiction were being spread by her supervisor . . . and that she was being terminated and had been escorted from the building." Some texts stated or implied she was a "drug addict" and was being terminated for illegal activity.[1]

Mahana contends USAP's communications do not fall under the TCPA's definition of "matter of public concern" relating to "health or safety" because "there were no complaints of incidents of negligence, abuse, endangering patients, violation[s] of administrative employee performance standard[s] or violations of rules and regulations." Thus, any question of public health and safety is "theoretical only and not based in fact."

Mahana's argument centers on what the communications do not say rather than focusing on the content of the communications. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1) (defining "communication" to include "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic"). The majority reaches its conclusion by expanding *Lippincott*.

In *Lippincott*, the Texas Supreme Court considered whether emails alleging that a nurse anesthetist represented himself as a doctor, endangered patients for his own financial gain, and sexually harassed employees were communications made in connection with a matter of public

---

[1] I recognize there is no evidence of drug use by Mahana in this record.

concern. *Lippincott*, 462 S.W.3d at 509. The court concluded the emails related to whether the nurse anesthetist "properly provided medical services to patients," and "the provision of medical services by a health care professional constitutes a matter of public concern." *Id.* at 509–10.

The majority distinguishes the text message communications in this case from the email communications in *Lippincott* because the text messages about Mahana's alleged drug use "do not address Mahana's job performance or relate to whether she properly provided medical services to patients" and "do not state that she used illegal drugs on the job or that her alleged use impacted her job performance." Without any further statutory analysis, the majority concludes the communications are not "related to the provision of medical services by a health care professional" and therefore were not a "matter of public concern."

I agree the communications here and in *Lippincott* are distinguishable; however, the distinction does not remove the communications from the statutory definition of "matter of public concern." According to the majority's analysis, communications about someone in the healthcare industry fall under the definition of "matter of public concern" only if the communications relate to the provision of medical services. The majority concludes communications about Mahana's alleged drug addiction would be a health or safety concern only if the text messages stated she used drugs while working or her drug use impacted her ability to perform her duties. This requires too much.

Although *Lippincott* held "the provision of medical services by a healthcare professional constitutes a matter of public concern," nothing within the opinion limits the statutory definition of "matter of public concern" to only those acts. 462 S.W.3d at 509. More importantly, the TCPA has prescribed a specific definition to "matter of public concern" requiring only that "an issue relate to health or safety" without any further elaboration or qualification. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7). The majority ignores the plain-meaning approach dictated by the

–3–

supreme court and improperly narrows the scope of the TCPA by inserting the requirement that communications involve more than a "tangential relationship to matters of public concern." *Id.* Mahana was a healthcare professional admittedly in charge of providing general anesthetic services and administering anesthesia. Any use of drugs that could impair her ability to perform her duties at the very least involves a "tangential relationship" to matters of public concern.

Any notion that courts should read implicit limitations into the TCPA definitions has been put to rest by the Texas Supreme Court. *See Lippincott*, 462 S.W.3d at 509 (plain language of statute imposes no limiting language that communication must be public, therefore we presume legislature intended communications to include both private and public communications); *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (applying plain-meaning construction of TCPA definitions' literal language even when this results in vastly expansive application of "exercise of the right of free speech"). "We do not substitute the words of a statute in order to give effect to what we believe a statute should say." *Coleman*, 512 S.W.3d at 901. All the legislature has required is that USAP's communications be "made in connection with a matter of public concern," and a "matter of public concern" includes "an issue related to health or safety." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3), (7). Text messages between coworkers indicating a nurse anesthetist tested positive for opiates and other controlled substances concern an "issue related to health or safety." *See, e.g., Coleman*, 512 S.W.3d at 901 (statements, although private and among employees, related to "matter of public concern").[2] Accordingly, USAP's "communications" qualify as an "exercise of the right of free speech" under the TCPA.[3] Having

---

[2] The record indicates Mahana's drug test came back negative; however, this is irrelevant to the analysis. Whether a statement is true or false, defamatory or not, has no bearing on whether the statement constitutes an exercise of the right of free speech. *Cruz v. Van Sickle*, 452 S.W.3d 503, 515 (Tex. App.—Dallas 2014, pet. denied); *see also In re Lipsky*, 411 S.W.3d 530, 543 (Tex. App.—Fort Worth 2013, orig. proceeding).

[3] In recent opinions, this Court has determined the TCPA "has its limits," and not every communication falls under the statute. *See, e.g., Erdner v. Highland Park Emergency Ctr., LLC*, No. 05-18-00654-CR, 2019 WL 2211091, at *5 (Tex. App.—Dallas May 22, 2019, no pet.); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 428 (Tex. App.—Dallas 2019, pet. denied); *Staff Care, Inc. v. Eskridge Enterps, LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *5 (Tex. App.—Dallas May 15, 2019, no pet.) (mem.op.). However, the alleged communications in these cases involved business disputes. In *Staff Care* and *Erdner*, even though the parties were in the healthcare industry, we concluded this alone was not

–4–

reached this conclusion, I do not address whether the communications relate to community well-being.

The second step in the TCPA analysis required Mahana to establish by clear and specific evidence a prima facie case for each essential element of her intentional infliction of emotional distress claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). But because the majority does not reach step two, neither do I. *See Erdner*, 2019 WL 2211091, at *8 (Whitehill, J., dissenting) (not reaching second step of TCPA analysis when not considered by the majority).

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

181414DF1.P05

---

enough to turn a private communication made in connection with a business dispute into a matter of public concern. *Erdner*, 2019 WL 2211091, at *5; *Staff Care, Inc*., 2019 WL 212116, at *6. Here, the alleged communications directly involve a matter of public concern regarding health or safety. Therefore, my application of the statute neither tests the limits of the TCPA nor results in a "potentially absurd result that was not contemplated by the Legislature." *Erdner*, 2019 WL 2211091, at *5.