# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON REMAND

---

## NO. 03-21-00010-CV

---

**Lampasas Independent School District, Appellant**

**v.**

**Mike Morath, the Honorable Commissioner of Education for the State of Texas; Bellpas, Inc.; and Copperas Cove Independent School District, Appellees**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-005192, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

On remand from the Texas Supreme Court, which determined that "no jurisdictional infirmity" precluded the Commissioner of Education from deciding appellee Bellpas, Inc.'s administrative appeal in this detachment-and-annexation case, we consider the remaining merits issues in this appeal. *See Morath v. Lampasas Indep. Sch. Dist.* (*LISD II*), 686 S.W.3d 725, 729 (Tex. 2024). In the administrative appeal, the Commissioner granted Bellpas's detachment-and-annexation petition and ordered Bellpas's property detached from appellant Lampasas Independent School District (LISD) and annexed to appellee Copperas Cove Independent School District (CCISD). *See* Tex. Educ. Code § 13.051 (establishing procedures for detachment and annexation of school-district territory). After LISD sought judicial review,

the trial court affirmed the Commissioner's decision. For the reasons explained below, we affirm.

## BACKGROUND

The underlying facts and procedural history are well-known to the parties and have been set out in our prior opinion and the supreme court's opinion. Thus, we will limit our discussion of the facts and procedural history to those relevant to our analysis of the merits of LISD's remaining issues on appeal.

Bellpas, a developer, intends to develop property for a residential community at the east end of LISD. LISD's middle and high schools are located almost twenty miles away, while CCISD's schools are within six miles of the intended development. In December 2015, Bellpas, the property's sole surface owner, presented a detachment-and-annexation petition to the LISD and CISD boards of trustees, as required under Section 13.051. *See id.* § 13.051(a) (requiring party requesting that territory be detached from one school district and annexed to another contiguous district to present petition to each board of trustees). "The petition requirements are minimal: it must simply 'give the metes and bounds' of the affected territory and be signed by a majority of the registered voters residing in the territory or, if there are no residents, the surface owners." *LISD II*, 686 S.W.3d at 730 (quoting Tex. Educ. Code § 13.051(b)).

In the original petitions, Bellpas described the property as consisting "of 348.55 acres of land more particularly shown and described by the metes and bounds in Appendix A"; the property's taxable value; and the social, economic, and educational effects of the proposed detachment and annexation. *See* Tex. Educ. Code § 13.051(b)(2), (c), (h). The petitions also

2

provided a surveyor's sketch (a map showing the outline of the property) and three pages of field notes, attached as Appendix A, which identified the total acreage as 348.55 acres and described the territory through landmarks, courses, points, angles, distances, and references to recorded deeds and plats. *See id.* § 13.051(b)(2).

When Bellpas decided a month later to carve out 12.72 acres from the property for immediate development, it presented amended petitions to both school boards. In both amended petitions, Appendix A was revised to reflect the acreage change, and the map and field notes identified the updated description of the "Affected Territory" as 335.83 acres. In addition, the first page of the amended petition sent to CCISD described the Affected Territory as "335.83 acres of land more particularly shown and described by metes and bounds in Appendix A." However, Bellpas failed to conform the first page of the amended petition sent to LISD to the description in Appendix A—"an 'overlooked' typographical error, which Bellpas did not discover—and LISD did not identify—before the administrative appeal to the Commissioner." *LISD II*, 686 S.W.3d at 730. As a result, the first page of the amended petition sent to LISD continued to describe the Affected Territory as "348.55 acres of land more particularly shown and described by metes and bounds in Appendix A," while Appendix A reflected the modified acreage and description of the Affected Territory that Bellpas sought to detach from LISD.

CCISD held a hearing and approved the petition; LISD never took action on the petition. If only one affected district disapproves the petition, Section 13.051 allows a de novo appeal of that decision to the Commissioner. *See* Tex. Educ. Code § 13.051(j) (allowing appeal to Commissioner under Education Code Section 7.057 but establishing that Section 13.051(j) appeal is de novo). After eighteen months of delay by LISD in complying with its statutory duty to either approve or disapprove the detachment-and-annexation petition, Bellpas filed a petition

3

for review ("administrative appeal") with the Commissioner. The Commissioner appointed an administrative law judge (ALJ) to conduct a de novo hearing on the merits. The ALJ concluded that the Commissioner had jurisdiction over Bellpas's administrative appeal, and after the de novo hearing, the Commissioner granted Bellpas's detachment-and-annexation petition. LISD sued for judicial review of the Commissioner's order; the trial court affirmed the Commissioner's decision.

When LISD appealed the trial court's judgment to this Court, we concluded as a matter of first impression that LISD's inaction on Bellpas's petition was not an action that triggered the Commissioner's jurisdiction under Section 7.057(a)(2)(A). *Lampasas Indep. Sch. Dist. v. Morath* (*LISD I*), 644 S.W.3d 866, 867 (Tex. App.—Austin 2022), *rev'd and remanded LISD II*, 686 S.W.3d 725 (Tex. 2024); *see also* Tex. Educ. Code § 7.057(a)(2)(A) (allowing appeal to Commissioner if person is aggrieved by "actions or decisions of any school district board of trustees that violate . . . the school laws of this state"). The Commissioner, Bellpas, and CCISD sought review in the Texas Supreme Court, which held "that the Commissioner had jurisdiction because, under a plain reading of the Education Code, a board 'disapproves' a petition by not approving it within a reasonable time after a hearing." *LISD II*, 686 S.W.3d at 729. The supreme court further held that the Commissioner did not lose jurisdiction by failing to issue a ruling within 180 days, concluding that the statutory deadline is not jurisdictional. *Id.*

## ANALYSIS

### Standard of review

The substantial-evidence standard of the Texas Administrative Procedure Act (APA) governs our review of the Commissioner's final order. *See* Tex. Gov't Code § 2001.174.

4

The APA requires that we reverse or remand an agency's decision that prejudices the appellant's substantial rights

> because the administrative findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, or (5) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Scally v. Texas State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 440 (Tex. App.—Austin 2011, pet. denied) (citing Tex. Gov't Code § 2001.174(2)(A)–(D), (F)).

"The APA also authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *Id*. at 440-41(citing *Graff Chevrolet Co., Inc. v. Texas Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex. App.—Austin 2001, pet. denied)); *see also* Tex. Gov't Code § 2001.174(2)(E). Under this deferential standard, "[t]he findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence," and LISD bears the burden of proving otherwise. *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). LISD's burden is a heavy one—if the record contains some reasonable basis for the agency's action, even a showing that the evidence preponderates against the agency's decision will not be enough to overcome it. *Id.* at 452. "Our ultimate concern is the reasonableness of the agency's order, not its correctness. *Scally*, 351 S.W.3d at 441 (citing *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984)).

Whether the agency's order satisfies the substantial-evidence standard is a question of law. *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per

5

curiam). Thus, the district court's judgment that there was substantial evidence supporting the Commissioner's decision is not entitled to deference on appeal. *Id.* On appeal from the district court's judgment, the focus of this Court's review, as in the district court, is on the Commissioner's decision. *See Scally*, 351 S.W.3d at 441 (citing *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000); *Tave v. Alanis*, 109 S.W.3d 890, 893 (Tex. App.—Dallas 2003, no pet.)).

We review the Commissioner's legal conclusions for errors of law and his factual findings for support by substantial evidence. *Id.* Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ) (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988)) (internal quotation marks omitted). Thus, we will sustain the agency's action if "the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988).

Under this standard, the Court "may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." Tex. Gov't Code § 2001.174; *see also Charter Med.*, 665 S.W.2d at 452. The ALJ, as factfinder, determines the credibility of witnesses and the weight of their testimony. *Scally*, 351 S.W.3d at 441 (citing *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.)). We may not set aside an agency decision merely because testimony was conflicting or disputed or because it did not compel the agency's decision. *See Brinkmeyer*, 662 S.W.2d at 956. Consequently, if the evidence would support either affirmative or negative

6

findings on a specific matter, we must uphold the agency's decision. *Charter Med.*, 665 S.W.2d at 453.

**Issues presented on remand**

LISD presented five appellate issues—three jurisdictional issues and two merits issues. The Texas Supreme Court expressly resolved two of the jurisdictional issues and indirectly resolved the third jurisdictional issue. LISD briefed this issue to the Texas Supreme Court. We assume that the supreme court considered this issue and concluded it to be so lacking in merit that no discussion of it was required. *LISD II*, 686 S.W.3d at 729 ("Finding no jurisdictional infirmity, we reverse the court of appeals' judgment and remand the case to that court to resolve the appeal on the merits."). To avoid any confusion on the part of LISD, however, we will briefly address this issue before turning to the two remaining merits issues.

**I.      Bellpas's administrative appeal was timely filed**

In its fifth issue, LISD complains that the Commissioner lacked jurisdiction to consider Bellpas's administrative appeal for two reasons. First, LISD argues that Bellpas's June 6, 2017 petition was not timely filed within 45 days of the "decision being complained about" being communicated to it, as demonstrated by Bellpas's suit filed in district court against LISD on October 6, 2016. In that suit, Bellpas sought declaratory and mandamus relief against the members of the LISD Board of Trustees in their official capacities for their allegedly ultra vires failure to approve or deny Bellpas's detachment-and-annexation petition. Second, LISD argues that Bellpas did not file its grievance with LISD within 15 days of the date it first knew or should have known of the decision or action giving rise to its complaint or grievance, as required by the LISD Board's local rules.

7

The Commissioner concluded that he had jurisdiction to consider Bellpas's appeal because "the timeline to file before the Commissioner is triggered by board action. There has been no board action. Further, this is a case of first impression and Petitioner should not be held to guess what amount of inaction the Commissioner will deem to be unreasonable." We agree that Bellpas's October 2016 suit did not complain of a Board decision or action. In that suit, Bellpas sought relief from the Board's inaction. It did not complain of LISD's disapproval of the detachment-and-annexation petition; it complained of the LISD Board's refusal to act on the petition. As the supreme court pointed out, "[i]nstead of adopting a resolution at one of their scheduled board meetings, which would have mooted the lawsuit, the trustees pursued a dilatory tactic of challenging the court's jurisdiction on the basis that Bellpas failed to exhaust its administrative remedies by filing a local grievance with the school district." *Id.* at 731.

Bellpas subsequently began the administrative process in April 2017 by filing a grievance at the local level with LISD when the trial court, at LISD's urging, abated the case for that process to occur. *Id.* LISD's superintendent dismissed Bellpas's grievance as untimely, and the Board affirmed the dismissal. *Id.* LISD explained that Bellpas's grievance was untimely under the local rule requiring filing of a grievance within 15 days of the date when a party first knew or should have known "of the decision or action giving rise to the complaint or grievance," and the grievance had not been filed within 15 days of the date it filed its October 2016 lawsuit.

While the supreme court ultimately held "that the LISD board disapproved Bellpas's amended petition by not adopting a resolution approving it within a reasonable time after the February 2016 hearing," *id.* at 740 (footnotes omitted), it also noted that

> LISD strung Bellpas along for months without explaining its inaction or pointing
> out the typographical error LISD latched onto as a post hoc justification for its

8

obvious stonewalling. . . . Instead, LISD chose to play a game of procedural "gotcha" for no apparent purpose other than to obstruct a statutory right and prevent any review on the merits.

*Id.* at 742 (footnote omitted). Under the circumstances present here, where there is no date certain for when LISD's disapproval occurred, and Bellpas made a "concerted effort" over a sixteen-month period to obtain a decision from LISD "through direct requests, a legal action, and a grievance proceeding," *id.* at 731, we hold that Bellpas timely filed its appeal to the Commissioner. We overrule LISD's fifth issue.

## II.    Bellpas's detachment-and-annexation petition contained a proper metes-and-bounds description

In its fourth issue, LISD contends that it was not given a proper metes-and bounds description and asserts that it thus has no idea what the boundaries are of the Affected Territory that Bellpas seeks to detach from it.[1] LISD argued before the Commissioner and urges on appeal that the metes-and-bounds description in Appendix A of the 335.83 acres of Affected Territory does not suffice because the map and field notes do not comply with the administrative rules governing land surveyors. LISD also argues that the evidence Bellpas provided at the hearing showed "that it owned less than 260 acres of property," not the 335.83 acres described in Appendix A.[2]

---

[1] We address only LISD's arguments that are not dependent on its contention that the typographical error on the amended petition it received means that the Affected Territory is supposed to be 348.55 acres, given the Texas Supreme Court's determination that the amended petitions were materially identical because they both included the same controlling description of the territory consisting of 335.83 acres to be detached and annexed. *See Morath v. Lampasas Indep. Sch. Dist.* (*LISD II*), 686 S.W.3d 725, 741-42 (Tex. 2024).

[2] It also contends, without citation to the record, that "when the property offered into evidence was compared with the informal sketches Bellpas provided as proof of the boundaries,

The appellees respond that Appendix A (the map and field notes), which was appended to both amended petitions, sufficiently identified the Affected Territory, as required by Section 13.051(b)(2). Tex. Educ. Code § 13.051(b)(2) (requiring detachment-and-annexation petition to "give the metes and bounds of the territory to be detached and annexed"). The Texas Supreme Court touched on the adequacy of the description in the petitions when addressing LISD's argument that the Commissioner lacked jurisdiction because it and CCISD had not been presented with the same petition because of the typographical error that listed the total acreage as "335.83" only on the CCISD petition. *LISD II*, 686 S.W.3d at 740-42.

The supreme court initially observed that Section 13.051 requires the petition to provide only the metes and bounds of the affected territory, not the total acreage. *Id.* at 740. The court further stated that "the 'generally accepted meaning' of 'metes and bounds' in the annexation statutes is 'the boundary lines and corners of the land sought to be annexed.'" *Id.* at 740 n.62 (quoting *Grand Lodge of Order of Sons of Hermann in Tex. v. Curry*, 108 S.W.2d 574, 575-76 (Tex. App.—San Antonio 1937, writ ref'd) (describing annexation statutes for school and water districts)); *see also Metes and Bounds*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties."). The court also observed that "the map and field notes attached as Appendix A were the same in both amended petitions, describing the territorial limits of the area with the 12.72 acres carved out and clearly identifying the total acreage as '335.83' acres." *LISD II*, 686 S.W.3d at 741.

---

entire sections of property were located wholly outside of the boundaries of the sketches and one piece of property was already located in CCISD."

The Commissioner determined that Appendix A sufficiently and correctly identifies the Affected Territory. The Commissioner made a finding of fact that the amended petitions gave the metes and bounds of the territory to be detached and annexed. He also found that "Bellpas, Inc. is the sole surface owner of taxable property in the territory to be detached and annexed according to the most recent certified appraisal roll," and that "[t]he territory to be detached and annexed does not have residents."

As a matter of law, the Commissioner concluded that the statute requires that the petition contain a metes-and-bounds description that "properly describes the affected territory," and that if the metes-and-bounds description does that, Section 13.051(b)(2) does not require the metes-and-bounds description to comply with the administrative rules governing land surveyors and the uses of a seal on a survey document. *See Rio Vista Indep. Sch. Dist. v. Grandview Indep. Sch. Dist.*, 379 S.W.2d 408, 411 (Tex. App.—Waco 1964, no writ) (analyzing legal sufficiency of metes-and-bounds description in detachment-and-annexation case and concluding that "[i]f enough appears in the description to enable one 'familiar with the locality (to) identify the premises with reasonable certainty, it will be sufficient.'" (quoting *Gates v. Asher*, 280 S.W.2d 247, 248-49 (Tex. 1955)). He further concluded that the amended petitions contained "a valid metes and bounds description" under Section 13.051(b)(2) and that the amended petition complies with Section 13.051(b)(1)(B) and (2).

Well-established principles of statutory construction govern our review of the Commissioner's conclusion that the Section 13.051(b)(2) requirement that the petition give the "metes and bounds" means a description that "properly describes the affected territory," and that the statute does not require a survey that complies with the applicable surveyor's rules. *See, e.g.*, *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("When construing a

11

statute, our primary objective is to ascertain and give effect to the Legislature's intent. . . . [W]e begin with the statute's words."). "If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage." *Id.* We typically give undefined terms in a statute their ordinary meaning, "but if a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *In re Hall*, 286 S.W.3d 925, 928-29 (Tex. 2009) (orig. proceeding). "We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). "If the statute's language is unambiguous, 'we interpret the statute according to its plain meaning.'" *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (quoting *Lippincott*, 462 S.W.3d at 509). "If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, . . . we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC*, 340 S.W.3d at 438.

In this case, as the Texas Supreme Court explained, "metes and bounds" has a generally accepted meaning in the annexation statutes: "'the boundary lines and corners of the land sought to be annexed.'" *LISD II*, 686 S.W.3d at 740 n.62 (quoting *Curry*, 108 S.W.2d at 575-76). Had the Legislature intended to require a survey that comports with the regulations applicable to surveyors, it would have said so. *See Lippincott*, 462 S.W.3d at 509. To the extent there is room for policy determinations by the Commissioner about whether to impose such a requirement, however, we conclude that the Commissioner's interpretation of Section 13.051(b)(2) as requiring that the petition contain only a metes-and-bounds description that

12

"properly describes the affected territory" and that it need not comply with the surveyors' regulations is reasonable and does not contradict the language of the statute.

Therefore, we will defer to the Commissioner's interpretation and affirm his decision if substantial evidence supports his finding that the amended petitions gave the metes and bounds of the territory to be detached and annexed—and thus also supports his conclusions that the amended petitions contained "a valid metes and bounds description" under Section 13.051(b)(2) and that the amended petition complies with Section 13.051(b)(1)(B) and (2). The map and field notes in Appendix A indicate that "an iron rod cap marked M&A in the west margin of Big Divide Road" is the point of beginning of the tract being described, and then successively give courses, points, compass angles and distances, radiuses, and chords, with references to known landmarks, such as Big Divide Road and the G. C. & S. F. Railroad, and to writings of record in the deed and plat records of Lampasas County, back to and closing with the point of beginning, thus describing a discrete tract containing 335.83 acres of land. This description embodies the legal-dictionary definition of "metes and bounds": "The territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties." *Metes and Bounds*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Rather than challenge this finding as not supported by substantial evidence, LISD attempts to argue that other evidence in the record showed that the description was inaccurate and that Bellpas proved only that it owned 254.169 acres of land, not the 335.83 acres described

13

in Appendix A.[3]  LISD bases its argument on the evidence Bellpas presented about the economic effects of the proposed boundary change, which included receipts showing that in 2017 it paid LISD $2,750.62 in taxes on fourteen parcels located within the Affected Territory, which had a total acreage of 254.169.  LISD asserts that these 254.169 acres are the only parcels that Bellpas has proven it owns and that therefore the Commissioner's order does not inform LISD of the exact boundaries of the other 90.361 acres that LISD must detach.  However, Section 13.051 does not require the affected territory in a detachment-and-annexation case to be identified by ad valorem tax parcels (which would not necessarily match up with the property sought to be detached and annexed); it requires identification of the affected territory by a metes-and-bounds description.  Similarly, it does not require the petitioner to prove its ownership of the property. Instead, it requires the detachment-and-annexation petition to be signed by a majority of "(A) the registered voters residing in the territory to be detached and annexed, if the territory has residents; or (B) the surface owners of taxable property in the territory to be detached and annexed, if the territory does not have residents . . . ." Tex. Educ. Code § 13.051(b)(1).  In the statutory context, it makes sense that a petitioner is not required to prove ownership of all the affected territory because detachment and annexation does not transfer ownership of that territory—it affects the boundaries of the school districts, which in turn affects the number of students enrolled in the district as well as the taxable property in the district.  Thus, the signatory requirements differ depending on whether there are residents affected by the petition.  Here, no

---

[3]  LISD does not challenge the Commissioner's finding of fact that "Bellpas, Inc. is the sole surface owner of taxable property in the territory to be detached and annexed according to the most recent certified appraisal roll."

14

evidence was presented that there were residents in the 335.83 acres described in Appendix A or that there was any surface owner of that Affected Territory other than Bellpas.

We conclude that substantial evidence supports the Commissioner's finding that Appendix A to the amended petitions gave the metes and bounds of the territory to be detached and annexed. We affirm that finding and his conclusions that the amended petitions contained "a valid metes and bounds description" under Section 13.051(b)(2) and that the amended petition complies with Section 13.051(b)(1)(B) and (2). We overrule LISD's fourth issue.

### III. The administrative law judge had the authority to issue sanctions, including the sanction of deeming that the social and educational factors should be found to strongly favor the boundary change

In LISD's third issue, it argues that the Commissioner erred by failing to consider the social and educational factors at the hearing and instead deeming as a discovery sanction that those factors "strongly favor the boundary change." LISD contends that the sanctions were "legally erroneous" because they were not based on LISD's failure to comply with an order compelling discovery.[4] It contends that instead the ALJ improperly awarded sanctions based on Bellpas's complaints about LISD's treatment of it when Bellpas tried to conduct three depositions on December 15, 2021, even though Bellpas had not secured an order compelling those depositions, and based on LISD's failure to comply with a subpoena, which LISD contends was not enforceable by the Commissioner. Appellees respond that the Commissioner had authority to impose the sanctions and that LISD's conduct justified the sanctions.

Section 157.1054 (d) of the Commissioner's Rules provides as follows:

___

[4] Again, we address only LISD's arguments on this issue that have not been disposed of by the Texas Supreme Court's holdings on the Commissioner's jurisdiction.

(d)    Requirements concerning discovery sanctions include the following.

(1) Motions for sanctions or order compelling discovery. Upon reasonable notice to all party representatives and affected persons, a party may apply to the administrative law judge for an order compelling discovery. A party may not request sanctions under paragraph (3) of this subsection without having first obtained an order compelling discovery.

(2) Enforcement in district court. If a person fails to comply with a subpoena or a commission for deposition issued by an administrative law judge, the agency or party requesting the subpoena or commission for deposition may seek its enforcement in district court in any manner provided by law.

(3) Failure to comply with order or with discovery request. If a party; or an officer, director, or managing agency of a party; or a person designated to testify on behalf of a party fails to comply with proper discovery requests or to obey an order compelling discovery, an administrative law judge may, after opportunity for hearing, issue orders in response to the failure, including any of the following orders:

(A) preventing the disobedient party from further discovery of any kind, or of a particular kind;

(B) deeming any facts pertaining to the order, or any other facts, to be established, as claimed by the moving party;

. . . .

(4) Abuse of discovery process. The administrative law judge may impose any of the sanctions listed in paragraph (3) of this subsection on a party who abuses the discovery process in seeking or resisting discovery or who files a request, response, or answer that is frivolous, oppressive, or made for the purpose of delay.

19 Tex. Admin. Code § 157.1054 (2025) (Tex. Dep't of Educ., Discovery). Appellees contend that the ALJ followed these rules and issued appropriate sanctions.

On November 3, 2017, Bellpas filed a motion to compel discovery, arguing that LISD had failed to fully respond to Bellpas's prior discovery requests and interrogatories. In the

16

ALJ's order compelling discovery, he noted that LISD took the position at the hearing that the ALJ's considering Bellpas's motion on its merits was an ultra vires action because of its arguments that the Commissioner lacked jurisdiction, and it refused to answer the ALJ's questions about LISD's objections to Bellpas's discovery requests. The ALJ granted Bellpas's motion and ordered LISD to produce all requested discovery by December 15, 2017.

Bellpas noticed the depositions of LISD's chief financial officer, superintendent, and Board president in a single notice for December 15. However, after serving Bellpas with a motion to quash the depositions after business hours on December 14, LISD refused to allow the depositions to proceed on the ground that "the rules do not permit a notice of deposition for more than one person."[5] On January 12, 2018, Bellpas filed its motion for sanctions for LISD's continued refusal to provide discovery and its refusal to allow depositions of its officers. Bellpas sought sanctions under Section 157.1054(d), including prohibiting LISD from further discovery, cancelling the merits hearing and instead allowing Bellpas to present a prima facie case on the boundary change, and prohibiting LISD from introducing evidence or cross-examining on the merits.

The ALJ granted the motion in part and found that LISD had "completely failed" to comply with the prior discovery order. It ordered LISD to fully comply with Bellpas's discovery requests on or before January 29, 2018, and sanctioned LISD by prohibiting it from conducting any further discovery. The ALJ warned LISD of the consequences of further discovery abuses as follows:

> Sanctions are appropriate in this cause. However, a death penalty sanction is not appropriate. Because [Bellpas] has not been provided with the discovery it

---

[5] The ALJ later overruled this objection.

17

legitimately requested, the evidentiary hearing scheduled for January 25 and 26, 2018 is continued. To ensure that the information at issue is received by [Bellpas], this Order provides a new date for the information to be provided[.] [Bellpas] will be allowed to request additional discovery, which [LISD] is required to answer. [LISD] will not be allowed to request additional discovery but may participate in depositions called by [Bellpas].

. . . .

**It should be noted while a death penalty sanction is not currently warranted, a failure by [LISD] to comply with this Order or the referenced subpoena could result in the imposition of a death penalty sanction.**

On April 30, 2018, Bellpas filed its renewed motion for sanctions, alleging LISD had still failed to comply with all discovery requests. After an evidentiary hearing, the ALJ "concluded that [LISD] flagrantly and obstinately failed to comply with discovery orders, and that this has significantly harmed Bellpas Inc. in its ability to present its case." Accordingly, as a sanction, "it is deemed that the social and educational factors strongly favor the boundary change."

Section 157.1054(d)(4) authorizes an ALJ to impose any of the sanctions listed in paragraph (3) of subsection (d) on a party who "abuses the discovery process in seeking or resisting discovery." Section 157.1054(d)(7) requires the ALJ to state the specific basis for any sanction in the record or in a written order. The ALJ's order deeming that the social and educational factors strongly favor the boundary change complies with Section 157.1054(d)'s requirements. The ALJ expressly instructed LISD to comply with his discovery orders, warned LISD of the consequences of noncompliance, and issued sanctions that progressed in severity as LISD's discovery abuse continued. LISD was able to present evidence at the merits hearing on the economic factors and outstanding jurisdictional issues. We conclude that the ALJ did not err

18

by deeming the social and educational factors to favor Bellpas as a sanction for LISD's discovery abuse.

LISD asserts that the Commissioner's decision to deem these findings violates the APA's requirement that "[f]indings of fact may be based only on the evidence and on matters that are officially noticed," Tex. Gov't Code § 2001.141(c), and Section 13.051(j)'s requirement that the Commissioner "shall consider the educational interests of the students in the affected territory and the affected districts and the social, economic, and educational effects of the proposed boundary change," Tex. Educ. Code § 13.051(j). We disagree. The Commissioner's rules expressly allow for a fact to be deemed in favor of the moving party as a sanction for discovery abuse. The APA provides that an ALJ may impose appropriate discovery sanctions similar to those imposed by the Commissioner's rules. Tex. Gov't Code § 2003.0421(a)(2), (b)(1), (3). Thus, we conclude that the APA contemplates sanctions of the type imposed by the Commissioner's Rules.

Finally, we note that LISD asserts that because of the sanctions resulting in the deemed facts, the Commissioner lacked evidence "on the issue of the educational interests of the students who may be affected by the detachment and annexation proceeding," and thus, he improperly failed to consider the requirements of Section 13.051(j). We disagree. Section 13.051(j) requires that "[i]n deciding the appeal, the commissioner shall consider the educational interests of the students in the affected territory and the affected districts and the social, economic, and educational effects of the proposed boundary change." Tex. Educ. Code § 13.051(j). The Commissioner made findings of fact concerning the taxable value of the affected territory, the amount of property taxes Bellpas had paid to LISD in 2017, and other findings of fact related to the economic effects of the proposed boundary change, including a

19

finding that "[i]f the proposed detachment and annexation is not granted, [Bellpas] will not build the housing development it is seeking to build in the affected territory." The Commissioner also found that the economic impact on LISD would be negligible, while the impact on CCISD would be neutral because both revenue and expenses would increase. LISD does not contend that these findings are not supported by substantial evidence.

As discussed above, the Commissioner deemed as a sanction that the social and educational factors strongly favor the boundary change, and therefore he did not need to make findings of fact on those factors.[6] Thus, we conclude that substantial evidence exists that supports the Commissioner's ultimate conclusion that "[b]ecause the social and educational factors strongly favor the boundary change and because the economic effects of granting the proposed detachment and annexation are neutral, the proposed detachment and annexation should be granted." We overrule LISD's third issue.

## CONCLUSION

Having overruled LISD's remaining issues, we affirm the trial court's order affirming the Commissioner's decision.

_____
Gisela D. Triana, Justice

---

[6] Appellees point out that the ALJ admitted their expert's report into evidence, which analyzed the social and educational effects on potential students. The factors analyzed by the expert included the difference in distance between the LISD and CCISD schools and established the proximity and convenience of the CCISD schools. LISD does not contend that this evidence is not substantial evidence that supports the Commissioner's ultimate conclusion.

20

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed on Remand

Filed:   March 7, 2025