**Affirmed and Memorandum Opinion filed January 5, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00327-CV

---

### JEREMY SAMPSON AND KEVIN HUBBARD, Appellants

### V.

### HILL-WALD, LLC D/B/A WILLOWBROOK SPORTS COMPLEX, TRACY WALD, AND JEFFREY HILL, Appellees

---

### On Appeal from the 270th District Court
### Harris County, Texas
### Trial Court Cause No. 2021-76870

---

## MEMORANDUM OPINION

This interlocutory appeal under the Texas Citizens Participation Act (TCPA) arises from a defamation suit filed by a volleyball club against two fathers of volleyball players. *See* Tex. Civ. Prac. & Rem. Code § 27.001, *et seq*. Appellees, Hill-Wald, LLC d/b/a Willowbrook Sports Complex, Tracy Wald, and Jeffrey Hill (collectively, appellees) sued appellants Jeremy Allan Sampson and Kevin Russell Hubbard (collectively, appellants) for defamation. The underlying dispute centers

on allegedly defamatory statements made by appellants about appellees' alleged embezzlement and misuse of funds in connection with management of the volleyball club. Appellants filed a motion to dismiss under the TCPA, which the trial court denied. Concluding the TCPA does not apply to appellees' action, we affirm.

## BACKGROUND

In this TCPA appeal, the factual background rests on the plaintiffs' allegations and evidence.[1] Hill-Wald, LLC d/b/a Willowbrook Sports Complex (Willowbrook) operated a youth volleyball club that, along with other volleyball clubs, directed a circuit of volleyball tournaments called the Houston Shootout. The volleyball clubs together formed an organization called Texas Volleyball Group (TVG) for the purpose of conducting the tournaments. In connection with the tournaments, appellees sued other members of TVG asserting claims for deceptive trade practices, breach of contract, breach of fiduciary duties, tortious interference with a contract, tortious interference with prospective business relationships, conversion, and defamation.

Around the time that appellees sued members of TVG, appellant Sampson began exploring starting his own beach volleyball club. Sampson contacted Pri Piaitadosi-Lima, who owns a beach volleyball club, and inquired about opening a franchise of her Florida club in Houston. Lima told Sampson about Antonio Leao, a volleyball coach, who might be interested in working with Sampson. Willowbrook had been trying to recruit Leao to coach for their club. After Sampson spoke with Leao, Willowbrook allegedly learned that Sampson told Leao that Willowbrook had been accused of financial misdealings and that Leao should not work for

---

[1] *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (TCPA actions are based on plaintiff's allegations, not defendant's admissions or denials).

2

Willowbrook.

Upon request from Willowbrook, Sampson told appellees that appellant Kevin Hubbard had told Sampson that Willowbrook had misused funds entrusted to them. Hubbard allegedly reported that, in his capacity as a certified public accountant, he discovered financial misdeeds during an audit on Willowbrook. Appellees filed the underlying action alleging those statements were false and defamatory. Leao took a position with another club, choosing not to coach for Willowbrook or Sampson.

In response to appellees' claims, appellants filed a motion to dismiss under the TCPA. Appellants alleged in their motion that appellees' suit arose from their exercise of the right of free speech. Appellants asserted that appellees' claims concerned statements "allegedly made about matters of social or other interest to the community and concern to the public." Appellants asserted, "[t]he greater Houston community has an interest in knowing whether one of its most dominant volleyball clubs is engaging in financial malfeasance that led to the end of the highest-profile youth tournament circuit in the Houston area." Appellants further asserted that "allegations of misappropriating club fees paid by parents throughout the Houston area, who pay these fees for the purpose of having their daughters participate in these tournaments, is a subject of concern to the public." Appellants further alleged that appellees failed to present a prima facie case of all elements of their defamation claim.

Appellees responded to appellants' motion and alleged, inter alia, that the TCPA did not apply to this private business dispute as the dispute did not relate to a matter of interest to the community or of concern to the public. Appellees asserted that appellants' allegedly false statements only directly affected the fortunes of the parties involved, not members of a wider community or the public in general.

3

After a non-evidentiary hearing, which was not recorded, the trial court denied appellants' motion to dismiss. Appellants perfected this interlocutory appeal.

**ANALYSIS**

In two issues appellants allege the trial court erred in denying their motion to dismiss because they (1) established that the TCPA applies to their claims; and (2) appellees failed to present clear and specific evidence to support their defamation claims.

## I. Standard of Review and Applicable Law

The TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them on matters of public concern. The purpose of the statute is to identify and summarily dispose of lawsuits that are intended only to chill First Amendment rights, not to dismiss meritorious lawsuits. *Am. Int'l Holdings Corp. v. Holden*, No. 14-20-00413-CV, 2022 WL 1112844, at *3 (Tex. App.—Houston [14th Dist.] Apr. 14, 2022, pet. denied) (mem. op.).

The TCPA contemplates an expedited dismissal procedure applicable to claims brought to intimidate or silence a defendant's exercise of the rights enumerated in the Act. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). The party invoking the TCPA may file a motion to dismiss the "legal action" and must show by a preponderance of the evidence that the action is "based on or is in response to" that party's exercise of the right of free speech, right to petition, or right of association. Tex. Civ. Prac. & Rem. Code §§ 27.003(a), 27.005(b). If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the nonmovant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c).

Our review of a TCPA ruling generally involves three steps. First, at step one, the TCPA movant has the burden to demonstrate the nonmovant's legal action is "based on or is in response to"[2] the moving party's exercise of the right of association, right of free speech, or the right to petition. *See* Tex. Civ. Prac. & Rem. Code §§ 27.003(a), 27.005(b); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(b)).

Second, if the movant meets its step-one burden, the analysis proceeds to step two, where the burden of proof shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *Creative Oil*, 591 S.W.3d at 132.

Third, and finally, if the nonmovant meets its step-two burden, the analysis proceeds to step three, where the burden of proof shifts back to the movant to establish an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law, resulting in dismissal if the movant does so. *See* Tex. Civ. Prac. & Rem. Code § 27. 005(d); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(d)).

We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.); Tex. Civ. Prac. & Rem. Code § 27.011(b). A court's determination of whether claims fall within the TCPA's framework is subject to a de novo standard of review. *See Adams*, 547 S.W.3d at 894. Under that standard, we

---

[2] The previous version of section 27.005(b) applied to claims that were based on, related to, or in response to an exercise of certain rights. The current version applicable in this case removed the "related to" language from the provision, making its reach significantly more narrow. *See Mireskandari v. Casey*, 636 S.W.3d 727, 735 n.8 (Tex. App.—Dallas 2021, pet. denied) (discussing revision and collecting cases).

"make an independent determination and apply the same standard used by the trial court in the first instance." *Joselevitz*, 524 S.W.3d at 859. We must consider the relevant pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and any supporting or opposing affidavits "stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review these materials in the light most favorable to the nonmovant. *See Enter. Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 293–94 (Tex. App.— Houston [14th Dist.] 2020, no pet.).

## II. Application of the TCPA

For appellants to successfully obtain dismissal of appellees' claims, appellants had to establish by a preponderance of the evidence that appellees' "legal action is based on or is in response to [appellants'] exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code § 27.003(a). Appellants contend that the TCPA applies to appellees' claims because the claims are based on or in response to appellants' exercise of the right of free speech. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1)(A).

In the context of the TCPA, an "'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). "Communication," as used in the statute, "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). And, as relevant to appellants' arguments in this appeal, a "[m]atter of public concern" includes "a statement . . . regarding . . . a matter of political, social, or other interest to the community; or a subject of concern to the public." *Id*. § 27.001(7)(B); (C). To be a matter of public concern, a claim must have public relevance beyond the interests of the parties. *Creative Oil & Gas*, 591 S.W.3d at 136. That is, the

6

communication must refer "to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Id*. at 135 (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)). The communication must address "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Brady*, 515 S.W.3d at 884 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)); *see also Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 641 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd).

This court has previously applied the *Creative Oil & Gas* analysis in holding that communications directed to an audience of existing customers and tenants regarding a private business dispute are not a matter of public concern for purposes of TCPA applicability. *Bowman v. Fortitude Consulting Grp., Inc.*, No. 14-19-00686-CV, 2020 WL 3967807, at *4 (Tex. App.—Houston [14th Dist.] July 14, 2020, no pet.) (mem. op.); *see also Navidea Biopharmaceuticals, Inc. v. Capital Royalty Partners II, L.P.*, No. 14-18-00740-CV, 2020 WL 5087826, at *5 (Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.) (concluding that publicly traded company failed to show by preponderance of the evidence that the amount owed pursuant to a judgment was a matter of public concern for purposes of the TCPA).

Although "[t]he TCPA casts a wide net," the statute's scope is not as expansive and far reaching as once thought. *Adams*, 547 S.W.3d at 894. As the Texas Supreme Court explained in *Creative Oil & Gas*, "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." 591 S.W.3d at 137. Several courts, including this court, have limited the scope of the TPCA in accordance with *Creative Oil & Gas*. *See, e.g.*, *Booster Fuels, Inc. v. Fuel Husky, LLC*, No. 14-19-00912-CV, 2021 WL 5118486, at *4 (Tex. App.—Houston [14th Dist.] Nov. 4, 2021, pet. denied) (mem.

op.). The court's opinion in *Creative Oil & Gas* is instructive and guides our analysis on whether the communications at issue were based on or in response to a matter of public concern.

In *Creative Oil & Gas*, the lessor of an oil and gas lease sued the lessee in a trespass and trespass-to-try-title action, seeking a ruling that the lease terminated due to cessation of production. 591 S.W.3d at 130. As relevant here, the lessee and operator counterclaimed alleging the lessor had breached the lease and falsely told third-party purchasers of production that the lease had expired and payments on the purchases should stop. *Id*. The lessor moved to dismiss the counterclaims pursuant to the TCPA arguing its statements to third parties about the lease were an exercise of its right of free speech because they were made in connection with matters of public concern: a good, product, or service in the marketplace.

Rejecting these arguments, the Texas Supreme Court held that the lessor's communications with third parties were not covered by the TCPA because they were private business communications concerning a private contract dispute. *Id*. at 134–37. As the court explained, the term "good, product, or service in the marketplace" had to be interpreted considering the common meaning of a "matter of public concern," which "commonly refers to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Id*. at 135. Thus, the communication at issue "must have some relevance to a public audience of potential buyers or sellers" for it to relate to a "matter of public concern." *Creative Oil & Gas*, 591 S.W.3d at 135. Based on this understanding, the court held that because the alleged communications had "a limited business audience concerning a private contract dispute," they did not relate to a matter of public concern under the TCPA. *Id*. at 136.

The lessor also argued that its statements to third parties were an exercise of

8

its right of free speech because they were made in connection with another matter of public concern: "economic well-being." *Id.* at 137. The court also rejected this argument holding that "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id.*

The court, which acknowledged that it had "previously held that private communications are sometimes covered by the TCPA," also explained the communications in those cases fell within the purview of the TCPA only because they "involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved." *Id.* (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898, 901 (Tex. 2017); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509–10 (Tex. 2015)). The court explained that its prior decision in *ExxonMobil Pipeline Co. v. Coleman* involved "private statements by movants concerning plaintiff's alleged failure to gauge a storage tank" and thus involved communications "related to a matter of public concern due to 'serious safety and environmental risks.'" *Creative Oil & Gas*, 591 S.W.3d at 136 (citing *Coleman*, 512 S.W.3d at 898, 901). Similarly, its prior decision in *Lippincott v. Whisenhunt* involved communications related to allegations that a pediatric nurse anesthetist had failed to provide adequate coverage for pediatric cases, administered the wrong narcotic, falsified medical records, and violated the facility's sterile protocol policy, which the court held "are matters of public concern." 462 S.W.3d at 509–10.

Appellants assert that "Texas courts have repeatedly found 'social or other interest' at stake under the TCPA with respect to issues with far less public attention than this one." Notably, several of the opinions relied on by appellants were decided before *Creative Oil & Gas* clarified what can be considered a matter of public

9

concern for purposes of the TCPA. *See Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155, at *5 (Tex. App.—Austin Apr. 7, 2015, no pet.) (mem. op.); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 WL 1120921, at *11 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.); *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.); *see also Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (court did not consider applicability of TCPA because parties did not challenge court of appeals' decision that TCPA applied to provision of youth baseball coaching services in the marketplace).

Other opinions relied on by appellants are either distinguishable on the facts of each case, or did not address the applicability of the TCPA. *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 277–80 (Tex. App.—Tyler Aug. 30, 2021, pet. denied) (court applied TCPA "under the unique circumstances" of that case due to involvement of high-profile celebrities and extensive media coverage); *Montano v. Cronan*, No. 09-20-00232-CV, 2021 WL 2963801, at *5 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.) (statements accusing individual involved in rowing clubs of sexual misconduct were not purely private matters, and were based on or were in response to a party's exercise of the right of free speech and pertain to "a subject of general interest and of value and concern to the public" because of the involvement of the rowing clubs, US Rowing, and safety and welfare concerns); *Baker v. Orange Panda, LLC*, No. 04-19-00846-CV, 2020 WL 6293150, at *3 (Tex. App.—San Antonio Oct. 28, 2020, no pet.) (mem. op.) (parties did not dispute applicability of TCPA).[3]

Appellants filed a motion to dismiss in which they alleged that appellees' claims are based on or in response to appellant's right to freedom of speech because

---

[3] We further note that, with the exception of one supreme court opinion that did not address the applicability of the TCPA, the opinions appellants rely upon are not binding upon this court.

the greater Houston community has an interest in knowing whether a "dominant volleyball club" has engaged in financial misfeasance. Appellants attached no evidence to their motion. Both Sampson and Hubbard are private parties who contracted with appellees—also private parties—to facilitate their children's participation in volleyball. The alleged communication by Sampson warning a potential coach from entering into employment with appellees was not a subject of general interest and of value and concern to the public. The pleadings and the record before us do not reflect any element of public involvement or public interest in this dispute.

Appellants' communication with each other and with a potential coach for appellees was not a matter of health, political, economic or social concern to the community at large. *See Creative Oil & Gas*, 591 S.W.3d at 135. Likewise, their communication was not "related to a matter of public concern."

Appellants assert that the statements made by them allegedly accusing appellees of misusing funds are "a concern to club members, tournament participants, and the public at large." *Creative Oil & Gas* disapproved of applying the TCPA's free-speech prong to claims affecting only "the economic interest of the parties *and others with an interest*" in the transaction. 591 S.W.3d at 137 (emphasis added); *see also United Dev. Funding, L.P. v. Megatel Homes III, LLC*, No. 05-19-00647-CV, 2020 WL 2781801, at *3–4 (Tex. App.—Dallas May 29, 2020, pet. denied) (mem. op.) (applying *Creative Oil & Gas* and rejecting argument that communications were matter of public concern "because they relate to the economic well-being of [movants] and their investors").

Appellants assert that if the allegations of Willowbrook's financial malfeasance had been published in the local paper, "few persons (if any) would question whether [appellants] raised a 'matter of public concern.'" We disagree.

11

While the allegation of misuse of funds may affect the interests of other volleyball parents, the communications were not the "subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *See Brady*, 515 S.W.3d at 884. Appellants alleged communications relate only to the interests of the parties and other parents with an interest in the volleyball club, not the public at large. Moreover, appellants do not provide any contextual evidence to explain how their alleged communications with each other and to a potential employee of the volleyball club rise to the level of a matter of "political, social, or other interest to the community." *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(B).

We conclude that appellants have not shown by a preponderance of the evidence that appellees' defamation claims were based on or in response to a "matter of public concern." Accordingly, appellees' action does not fall within the TCPA's free-speech prong. *See* Tex. Civ. Prac. & Rem. Code § 27.001(3).

As we conclude that appellants did not meet their initial burden under the TCPA, we overrule appellants' first issue. We need not reach appellants' second issue, which addresses whether appellees presented clear and specific evidence to support their defamation claims.

## CONCLUSION

Having determined the TCPA does not apply to appellees' claims, we affirm the trial court's denial of appellants' motion to dismiss.


/s/     Jerry Zimmerer
Justice


Panel consists of Justices Zimmerer, Spain, and Hassan.

12